Tammy KOLUPAR, Plaintiff-Appellant-Petitioner,

v.

WILDE PONTIAC CADILLAC, INC. and Randall Thompson, Defendants-Respondents.

Supreme Court

*No. 02–1915. Oral argument March 12, 2004.— Decided July 13, 2004.*

2004 WI 112

(Also reported in 683 N.W.2d 58.)

1

For the plaintiff-appellant-petitioner there were briefs by *Paul M. Erspamer* and *Lisko & Erspamer, S.C.,* Waukesha, and oral argument by *Paul M. Erspamer.*

For the defendants-respondents there was a brief by *James W. Hammes, Kathryn Sawyer Gutenkunst,* and *Cramer, Multhauf & Hammes, LLP,* Waukesha, and oral argument by *Kathryn S. Gutenkunst.*

An amicus curiae brief was filed by *Mary Catherine Fons,* Stoughton, on behalf of Fons Law Office; *Judy Tomczak,* Madison, on behalf of Tomczak Law Office, LLC; *Jeff Scott Olson,* Madison, on behalf of The Jeff Scott Olson Law Firm, S.C.; and *Edward W. Harness,* Milwaukee, on behalf of the Consumer Guardian Group.

An amicus curiae brief was filed by *De Vonna Joy,* Big Bend, on behalf of the Consumer Justice Law Center; and *Gwendolyn G. Connolly,* Milwaukee, on behalf of the Law Office of Gwendolyn G. Connolly.

An amicus curiae brief was filed by *Jon G. Furlow* and *Michael Best & Friedrich, LLP,* Madison, on behalf of Fairfield Resorts, Inc., and oral argument by *Jon G. Furlow.*

An amicus curiae brief was filed by *Stephen E. Meili* and *Marissa Santiago,* Madison, on behalf of The Consumer Law Litigation Clinic of the University of Wisconsin Law School; *Peg Lautenschlager* and *Cynthia Hirsch,* Madison, on behalf of the Wisconsin Department of Justice; and *Mitchell Hagopian,* Madison, on behalf of The Wisconsin Coalition for Advocacy, Inc.

An amicus curiae brief was filed by *Colleen D. Ball,* Wauwatosa, and *Jeffrey R. Myer,* Milwaukee, on behalf of Legal Action of Wisconsin, and oral argument by *Jeffrey R. Myer.*

¶ 1. DAVID T. PROSSER, J. This is a review of a published decision of the court of appeals.[1] In the beginning this case involved a suit by Tammy Kolupar (Kolupar) against Wilde Pontiac Cadillac (Wilde) and one of Wilde's employees, Randall Thompson, over the sale of an unsatisfactory used car. Kolupar's underlying claims are no longer at issue; Kolupar and Wilde settled, and the circuit court entered a default judgment against Thompson. The primary question in this review is whether the circuit court properly exercised its discretion in awarding reasonable attorney fees and costs.

¶ 2. Kolupar argues that the circuit court failed to apply the proper legal analysis when it concluded that $15,000 was an appropriate award for fees and costs. In her view, the circuit court: (1) failed to expressly consider factors approved by this court for determining reasonable attorney fees; (2) failed to apply the "lodestar" method for determining reasonable attorney fees; and (3) erred by considering the recommendation of a discovery referee appointed by the court. Kolupar asserts that if the court had considered and applied the appropriate law, it would have determined that a substantially higher award of attorney fees was appropriate.

¶ 3. Wilde counters that the circuit court did in fact undertake an appropriate analysis and therefore did not erroneously exercise its discretion. Wilde posits that this court should defer to the circuit court's decision.

¶ 4. The circuit court's primary explanation for the $15,000 award for fees and costs indicates that the court believed Kolupar pleaded an excessive number of claims in her complaint. The court also stated that this "over-pleading" at the outset caused the case to be

---

[1] *Kolupar v. Wilde Pontiac Cadillac, Inc.*, 2003 WI App 175, 266 Wis. 2d 659, 668 N.W.2d 798.

"over-tried" and discovery to be "well over-done." While both Kolupar and Wilde seem to acknowledge that each spent more time litigating this small case than the case deserved, they each pin the blame on the other side's unreasonableness as the source of the excessive litigation.

¶ 5. We uphold the circuit court's decision to award $15,000 in attorney fees. The court's explanation mirrored the sparse information it had available to make its decision. If Kolupar had properly submitted the documentation supporting the number of hours reasonably expended, then the court's explanation would likely not withstand scrutiny. However, the circuit court's explanation comported with the type and amount of information it had in the absence of such documentation. As a result, the circuit court's explanation reflected Kolupar's unmet burden to demonstrate the reasonableness of the requested award. By contrast, although the circuit court understood that substantial costs were incurred, it did not explain why it concluded that no costs were appropriate. We therefore remand the issue to the circuit court to address the issue of costs.

## BACKGROUND

¶ 6. On March 29, 2000, Kolupar sued Wilde and Thompson in Milwaukee County Circuit Court to recover damages allegedly incurred in connection with the purchase of a 1985 Mercedes Benz 190E. According to Kolupar's civil complaint, Thompson, Wilde's new car manager, accepted Kolupar's 1993 Pontiac Sunbird in exchange for the Mercedes, and represented that the Mercedes was in good mechanical condition. The transaction took place in March of 1994 at the Wilde dealership, but a court has never formally determined

whether Thompson was acting as an agent of Wilde or whether he was "curbing cars" on his own.

¶ 7. Kolupar asserted that both Wilde and Thompson were liable for fraud, federal and state odometer law violations, breach of express and implied warranties, and violations of Wisconsin's motor vehicle statute, Wis. Stat. § 218.01 (1993–94).[2] Wilde responded to the complaint by denying any involvement in the transaction.[3] In May 2001, Kolupar dropped the federal odometer claim—which permitted treble damages—when Wilde moved for summary judgment based upon the federal claim's two-year statute of limitation. If the case had gone to trial, the main factual issue likely would have been whether Thompson acted under Wilde's actual or apparent authority.

¶ 8. There was no trial. In December of 2002, two and one-half years after Kolupar initiated suit, Wilde and Kolupar settled the underlying claim for $6,600 dollars plus taxable costs. Between the inception of litigation and this settlement, the parties litigated the suit vigorously through numerous motions, near-constant correspondence, and headstrong, sometimes obstinate behavior regarding discovery matters that ultimately necessitated the appointment of a discovery referee.

---

[2] Subchapter I of Chapter 218 of the Wisconsin Statutes has since been substantially renumbered and revised. *See* 1999 Wis. Act 31; *see also* Conversion Table for Subchapter I of Chapter 218, Wisconsin Statutes 3596–98 (2001–02). All references are to the 1993–94 statutes unless otherwise noted.

[3] Thompson failed to comply with numerous court deadlines and the court granted Kolupar's motion for default judgment against him on February 25, 2002. While Thompson did appear by attorney to address the attorney fee issue in May 2002, his involvement is not material to our discussion.

¶ 9. By the time the parties settled, Kolupar asserted that she had accumulated approximately $41,000 in attorney fees and almost $11,000 in litigation expenses. Along with the $6,600 settlement, Wilde offered $15,000 in attorney fees, but Kolupar rejected that offer. Thus, the settlement left unresolved the issue of attorney fees. Since the $6,600 plus taxable costs for the underlying claim encompassed Kolupar's § 218.01(9) claim, and since that section provides that a court has authority to award "actual costs, including a reasonable attorney fee," Milwaukee County Circuit Judge Thomas R. Cooper, concluded that attorney fees were appropriate in this case.

¶ 10. Judge Cooper held hearings on May 13 and May 14, 2002, in order to resolve the issue of attorney fees and costs. The court received testimony from Frank T. Crivello (a former circuit judge who served as a discovery referee), Kolupar, Paul Erspamer (Kolupar's attorney), and Patrick Donahue (vice-president of Wilde). The testimony focused primarily on establishing each party's culpability for the escalating litigation expenses incurred by the parties.

¶ 11. Near the conclusion of the hearing, Judge Cooper addressed the billing documentation submitted by Kolupar. Wilde asked that Judge Cooper refuse to consider the written information because Kolupar filed the billing information in violation of a local rule. Milwaukee County Circuit Court Rule 365 directs that a party who wishes to submit any documents in support of a motion (other than a motion for summary judgment or dismissal) must provide opposing counsel with the materials no later than 10 days before the hearing date. Wilde did not receive the invoice until Friday, May

10, 2002, for a Monday, May 13, 2002, hearing. *See* Milwaukee Cty. Ct. R. 365(a).[4]

¶ 12. Judge Cooper agreed with Wilde, holding that Kolupar's submission failed to comport with local rules. As a sanction for noncompliance, Judge Cooper declined to consider the untimely filed material in his decision.

¶ 13. At the conclusion of the hearing, Judge Cooper awarded Kolupar $15,000 in fees and costs. Judge Cooper stated that he was relying, at least in part, on the recommendation of Crivello. Crivello testified at the hearing that:

> In thirty years in [the] practice of law, as well as fifteen years as a circuit judge myself[,] I have never seen a $6,000.00 case grow barnacles the way this one has.
>
> . . . .
>
> I have served as special master in cases on numerous occasions here in Milwaukee County since leaving the bench. The only case that I have ever seen that approached this magnitude was . . . a multi-million dollar insurance case with fifteen defendants, including one British defendant. So without . . . going through every page of the several thousand pages I have in my possession, I recall three or four instances where I

---

[4] Milwaukee County Circuit Court Rule 365(a) provides:

If a movant desires to file a brief, affidavit, or other documents in support of a motion other than one for summary judgment or dismissal, such motion and supporting materials shall be received by all counsel of record and/or parties not represented by counsel of record and filed with the deputy court clerk of the assigned judge no later than ten (10) calendar days (including Saturdays, Sundays and holidays) before the time specified for the hearing.

Milwaukee Cty. Ct. R. 365(a).

sanctioned [Kolupar's attorney] myself by barring the presentation of testimony, or documents, or witnesses.

. . . .

Having examined the case in terms of discovery and evidence over the course of three hearings and months of correspondence, I think that the discovery and evidentiary issues in this case were grossly inflated. This was a two-person transaction for an automobile. . . .

. . . .

. . . So I would . . . adopt the offer in judgment and award the plaintiff the $6,600.00, which apparently she has accepted, and I would award $15,000.00 from the defendant to the plaintiff in fees. And that is how I would dispose of this case if I were asked to.

I am troubled—and I don't mean to be offensive to these lawyers, who[m] I have a great deal of professional respect for. . . . And I don't think the case is worth much more than [$]15,000 in fees, frankly. Although I know both sides spent a lot more time than that.

When lawyers decide to do that, then they bear the onus of that decision.

¶ 14. On the second day of the hearing, after testimony and argument, Judge Cooper explained his decision as follows:

There is no question this case was over-tried. Discovery was over—well over-done. It was over-[pled] right from the get-go on the complaint. There was the shotgun pleading where everything was [pled] against Wilde short of conquering Europe during World War II.

So that was the framework, and the daunting discovery mountain was created right from the get-go. And that was based upon the plaintiff's pleading. A lot

11

of that I think was over-pled, but it only applies as to what are reasonable attorney's fees during the course of a contentious non-cooperative discovery process.

. . . .

Like [counsel] said, this matter was over-tried. The long and short of it, it comes down to—I appreciate [the discovery referee's] recommendation. I think it's appropriate. I happen to concur with it.

In my discretion I believe that there is entitlement for reasonable attorney's fees on behalf of the plaintiff. Reasonable attorney's fees in my mind of $15,000. . . .

. . . . There was way too much work done, and there should have been a focus, and much earlier in the proceedings. And there is nobody here with clean hands, so that's the order of the Court. Joint and several.

¶ 15. When Kolupar asked Judge Cooper to clarify the issue of costs, he responded that $15,000 included both fees and costs.

¶ 16. After her motion for reconsideration was denied by the circuit court, Kolupar appealed. A divided court of appeals voted to uphold the circuit court's determination. It concluded that Judge Cooper did not err by excluding Kolupar's billing documentation for untimely filing, did not err by considering the recommendation of the discovery referee, applied the correct legal standard in reaching its conclusion as to attorney fees, and did not deny taxable costs. In dissent, Judge Ralph Adam Fine concluded that Judge Cooper did not consider the appropriate factors in reaching a reasonable attorney fee award, and the court should have relied on Kolupar's billing documentation rather than the recommendation of the discovery referee.

## DISCUSSION

■

¶ 17. Under the American Rule, the parties to a lawsuit bear the cost of their own attorney fees absent legislative authorization to shift costs. *Buckhannon Bd. and Care Home, Inc. v. West Virginia Dep't of Health & Human Res.,* 532 U.S. 598, 602 (2001); *Hensley v. Eckerhart,* 461 U.S. 424, 429 (1983); *Kremers-Urban Co. v. Am. Employers Ins. Co.,* 119 Wis. 2d 722, 744, 351 N.W.2d 156 (1984) ("Each party to a lawsuit, under [the American Rule], should bear its own costs of litigation."). The Wisconsin legislature has authorized courts to award costs and attorney fees to successful litigants in many contexts. *See, e.g.,* Wis. Stat. § 100.18(11)(b) (2001–02) (Wisconsin Deceptive Trade Practices Act (DTPA)); Wis. Stat. § 218.0171(7) (2001–02) (Wisconsin Lemon Law); 425.308(1–2) (2001–02) (Wisconsin Consumer Act (WCA)).

¶ 18. Kolupar's complaint included a claim for relief pursuant to Wis. Stat. § 218.01(9)(b), now renumbered as Wis. Stat. § 218.0163(2). Chapter 218 of the Wisconsin Statutes regulates the automobile business in many respects. *See Dep't of Transp. v. Transp. Comm'n,* 111 Wis. 2d 80, 92, 330 N.W.2d 159 (1983). Part of its design is "to protect Wisconsin buyers of motor vehicles from fraud." *Id.* at 94 (citing *State v. Helwig,* 262 Wis. 299, 301, 54 N.W.2d 907 (1952)). To this end, § 218.01 provides that "retail buyers" who suffer pecuniary loss may recover damages in court. In 1994, the time of the relevant transaction in this case, § 218.01(9)(b) provided as follows:

> Any retail buyer suffering pecuniary loss because of a violation by a licensee of sub.(3)(a)4., 5., 6., 8., 9., 10., 11., 18. or 31. may recover damages for the loss in any

court of competent jurisdiction together with costs, including reasonable attorney fees.

¶ 19. An interesting question, though one not presented by the present case, is whether the word "may" in § 218.01(9)(b) indicates that the decision to award or not award costs and attorney fees is discretionary. Unlike some fee-shifting statutes, § 218.01(9)(b) does not use the word "shall," which would indicate that costs, including attorney fees, must be awarded to successful litigants. However, we note that the language does not state that the court *may award costs,* including reasonable attorney fees, but rather provides that a retail buyer suffering pecuniary loss for a recognized violation "*may recover damages* for the loss in any court of competent jurisdiction *together* with costs, including reasonable attorney fees." Wis. Stat. § 218.01(9)(b) (emphasis added). It would certainly be odd for a circuit judge to decline to impose damages once it has been determined that the plaintiff suffered pecuniary loss as a result of a listed violation by the defendant. Given that the statute directs that the court "may" award damages "*together* with costs, including reasonable attorney fees," the statute may dictate that where damages are awarded, costs—including attorney fees—should follow.

¶ 20. In this case, Kolupar's recovery of $6,600—plus taxable costs—resulted from Wilde's offer of settlement, as opposed to a factfinder's determination that Kolupar met the statutory threshold entitling her to recover under § 218.01(9)(b). The settlement was in satisfaction of Kolupar's underlying claims, including her § 218.01(9)(b) claim. Even if the award of costs were at the discretion of the court, Judge Cooper said here he

14

was persuaded that the statute controlled and that reasonable attorney fees were due.

A. Attorney Fees

¶ 21. We now turn our attention to the specific question presented by this case: Once costs are either required or found appropriate, how should the court arrive at a proper attorney fee award?

¶ 22. Judge Cooper expressly determined that, in his discretion, $15,000 in attorney fees was reasonable. When a circuit court awards attorney fees, the amount of the award is left to the discretion of the court. *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 537, 335 N.W.2d 390 (1983). We uphold the circuit court's determination unless the circuit court erroneously exercised its discretion. *Standard Theatres, Inc. v. Transp. Dep't*, 118 Wis. 2d 730, 747, 349 N.W.2d 661 (1984). We give deference to the circuit court's decision because the circuit court is familiar with local billing norms and will likely have witnessed first-hand the quality of the service rendered by counsel. *Id.* Thus, we do not substitute our judgment for the judgment of the circuit court, but instead probe the court's explanation to determine if the court "employ[ed] a logical rationale based on the appropriate legal principles and facts of record." *Hughes v. Chrysler Motors Corp.*, 197 Wis. 2d 973, 987, 542 N.W.2d 148 (1996) (quoting *Vill. of Shorewood v. Steinberg*, 174 Wis. 2d 191, 204, 496 N.W.2d 57 (1993)).

¶ 23. What are the appropriate legal principles courts are to apply in determining whether a fee is appropriate?

15

¶ 24. Supreme Court Rule 20:1.5 addresses reasonable attorney fees. This rule was *not* drafted as a guide for courts to determine reasonable fees under fee-shifting statutes; it was designed to govern the ethical obligation of attorneys to charge reasonable fees. Nonetheless, this court has endorsed the factors set out in SCR 20:1.5 and encourages courts to apply these factors when they are required to determine or evaluate attorney fees. *See Shorewood,* 174 Wis. 2d at 204 (citing cases). Using the enumerated factors helps courts exercise their discretion with a consistent set of legal principles, allowing applicants and their opponents to structure legal arguments and present evidence in the same manner.

¶ 25. Supreme Court Rule 20:1.5(a) lists "[t]he factors to be considered in determining the reasonableness of a fee." These factors are:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

16

¶ 26. Although SCR 20:1.5 does not purport to be exhaustive, its factors encompass a variety of considerations appropriate in the fee-shifting context. Admittedly, the factors are often quite subjective. Therefore the results are open to significant variation. The factors do not lead to a single unitary value as the only reasonable fee. They can justify a range of reasonable fees and different methods of calculating them. In the abstract, we might imagine an attorney using the factors to determine the reasonable range of fees that the attorney may ethically charge, and then determine the fees that he or she will actually charge based upon the market, or his or her perception of the market, for legal services. As a practical manner, attorneys probably determine the market value of their services, and then employ the factors to evaluate whether that market rate is reasonable. Either way, conceptually speaking, the factors serve to ferret out unreasonable fees; they do not command the analytical precision to lead a user to a single reasonable figure.

¶ 27. Thus, when courts endeavor to determine a reasonable fee using the factors listed in SCR 20:1.5, variation is to be expected. To the extent that discretionary decision-making can be made more uniform and transparent by providing an objective framework to assess these factors, such a framework is desirable.

¶ 28. The quest for a suitable framework for employing the SCR 20:1.5 factors is not uncharted territory. More than 20 years ago, the United States Supreme Court refined the methodology in federal courts for awarding attorney fees under fee-shifting statutes. *Hensley*, 461 U.S. 424. The Court acknowledged that the facts of each particular case ultimately govern the

17

amount of fees. *Id.* at 429. Noting that the legislative history of the statute at issue in that case expressed approval of 12 factors adopted by the Fifth Circuit Court of Appeals in *Johnson v. Ga. Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir. 1974),[5] *id.* at 429–30, the Court outlined a procedure for determining the amount of a reasonable attorney fee that incorporates an objective component while utilizing the *Johnson* factors. The Court stated: "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services." *Hensley,* 461 U.S. at 433. The structural starting point employed by the Court appears to have been inspired by *Lindy Bros. Builders, Inc. of Philadelphia v. Am. Radiator & Standard Sanitary Corp.,* 487 F.2d 161, 168 (3rd Cir. 1973), which commented that "the amount thus found to constitute reasonable compensation should be the *lodestar* of the court's fee determination." (Emphasis added).

¶ 29 The *Hensley* Court explained that the product of reasonable hours multiplied by a reasonable rate—the

---

[5] These factors are:

(1) time and labor required; (2) novelty and difficulty of issues; (3) skill required; (4) loss of other employment in taking the case; (5) customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by client or circumstances; (8) amount involved and result obtained; (9) counsel's experience, reputation, and ability; (10) case undesirability; (11) nature and length of relationship with the clients; and (12) awards in similar cases.

*Johnson v. Georgia Highway Express,* 488 F.2d 714, 717 (5th Cir. 1974).

so-called "lodestar" figure—subsumes many of the twelve *Johnson* factors, 461 U.S. at 434 n.9, but a court ought not end its analysis after arriving at that number. A court may adjust this lodestar figure up or down to account for any remaining *Johnson* factors not embodied in the lodestar calculation. *Id.* at 434. Since *Hensley,* the lodestar approach has become "the guiding light of [the Court's] fee-shifting jurisprudence." *Gisbrecht v. Barnhart,* 535 U.S. 789, 801 (2002) (citing *Burlington v. Dague,* 505 U.S. 557, 562 (1992)).

¶ 30. The obvious similarities between the *Johnson* factors and the factors enumerated in SCR 20:1.5 have their origin in the American Bar Association's Code of Professional Responsibility, Disciplinary Rule 2–106 (1969). *Hensley*'s endorsement of a method to analyze the *Johnson* factors under an objective framework is compelling. It reinforces the circuit court's discretion to set an award within a range of reasonableness and at the same time injects the exercise of that discretion with objectivity and uniformity. These aspirations are so important and desirable that we adopt *Hensley*'s lodestar methodology and direct the circuit courts to follow its logic when explaining how a fee award has been determined.

¶ 31. With respect to Judge Cooper's explanation for the fee award in this case, we note the dearth of hard facts available to the court. If Judge Cooper had relied on the *Hensley* lodestar approach that we adopt today, he would have been within his discretion to significantly reduce the attorney fee award to nothing or nearly nothing. As *Hensley* makes clear, "[t]he party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. *Where the*

*documentation of hours is inadequate, the district court may reduce the award accordingly."* 461 U.S. at 433 (emphasis added). As noted, Judge Cooper did not consider any billing invoices or other documentation of the hours worked as a sanction for Kolupar's failure to comply with local rules. The court of appeals affirmed Judge Cooper's interpretation of the rule giving rise to the sanction, and Kolupar did not raise this issue in her petition for review. Because this issue is not properly before us, we do not address it, *see* Wis. Stat. § 809.62(6); *see also White v. New Hampshire Dep't of Employment Sec.,* 455 U.S. 445, 454 (1982) (authorizing courts to reject fee requests when the requests fail to comply with local rules), except to observe that litigants who demand strict enforcement of the rules against others become vulnerable when they do not follow the rules themselves. On the facts presented here, Kolupar did not fully satisfy her burden to produce evidence of the hours worked, and Judge Cooper could have reduced her award, perhaps to a nominal amount, solely on that basis.

¶ 32. Judge Cooper nevertheless concluded that attorney fees were appropriate. The absence of billing documentation meant that he had few objective facts to rely upon in arriving at a figure for Kolupar's fees. The testimony reiterated the total amount Kolupar sought in fees and costs was approximately $53,000, and the court accepted that this figure constituted Kolupar's *actual* attorney fees and litigation expenses. Without the billing invoices, however, the court could not know how much time Kolupar's attorney spent on particular tasks, and therefore could make no assessment as to whether the hours her attorney exercised in pursuing

20

the claim were reasonable. This rendered any analysis under a lodestar approach impractical.

¶ 33. With respect to an analysis using the SCR 20:1.5 factors outside the lodestar framework, which until today has been the accepted methodology, Kolupar stresses that Judge Cooper did not *expressly* mention the factors nor did he discuss the full array of factors in his analysis. Judge Cooper's analysis is best explained by considering the amount and type of the information teased out at the hearing. The nature of the information did not lend itself to a factor-by-factor analysis because the lion's share of the testimony and argument focused myopically on who was more at fault for certain delays in discovery rather than on what SCR 20:1.5 factors or other methodology should guide the court to an appropriate award.

¶ 34. This becomes clear if we examine the factors individually and compare them with the information adduced at the hearing. Kolupar had the burden to demonstrate the amount of fees submitted were reasonable, *Milwaukee Rescue Mission, Inc. v. Redevelopment Auth. of Milwaukee,* 161 Wis. 2d 472, 494, 468 N.W.2d 663 (1991) (citing *Standard Theatres,* 118 Wis. 2d at 748), and Kolupar failed in this regard because Judge Cooper had little relevant information to assist him in making his fee award.[6] In the end, although we agree

---

[6] By combing the information available from the hearing transcript, we do not mean to imply that a hearing is always necessary or that a proper exercise of discretion will require courts to similarly focus on testimony if there is a hearing. We encourage the bar and judiciary to develop uniform procedures for determining attorney fees when appropriate, which may or may not include a hearing.

The above discussion is necessary for our analysis to demonstrate the dearth of reliable information available to

with Kolupar that, ideally the court should discuss each of these factors, we cannot justify a finding that Judge Cooper erroneously exercised his discretion when Kolupar failed in her burden to provide the court with anything meaningful to discuss.

¶ 35. We look to the eight factors set out in SCR 20:1.5 in relation to the award.

¶ 36. Paragraph (a)(1) lists "the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal services properly." Kolupar presented evidence as to the rate charged, $145 per hour, but because of the sanction, she did not present detailed information of what activities her attorney performed. Thus, Judge Cooper could not reach a conclusion as to whether the time Kolupar's attorney spent on the matter was reasonable, even if the rate was reasonable. By all accounts, the legal questions involved were neither novel nor particularly difficult, nor was the level of skill required to perform these legal services such that it warranted a large fee. The factual questions required investigation, and the testimony certainly explained some of the successes and failures of Kolupar's attorney's factual inquiries, yet the testimony did not establish the amount of time expended in those pursuits. Without a global accounting of how the attorney's time was spent, Judge Cooper could not arrive at a figure for the investigative component of Kolupar's attorney's bill, much less a figure for all his activities.

Judge Cooper in the absence of Kolupar's billing information. When the court is presented with reliable and accurate documentation as to the amount and nature of the time expended on the case, it would not be improper for the court to rely principally on that documentation.

22

¶ 37. Paragraph (a)(2) speaks to the likelihood, "if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer." Kolupar's attorney testified at the hearing that he was not precluded from taking on other work while this case proceeded.

¶ 38. Paragraph (a)(3) addresses the fee customarily charged in the locality for similar services. Some testimony touched on the hourly rate other attorneys charge, but as already discussed, even assuming the hourly rate was reasonable, that figure is not useful where the court is without reliable information as to how the hours claimed were spent. No information was given regarding the overall size of attorney fees in automobile fraud cases, nor would we expect there to be a typical attorney fee based on an hourly rate calculation because the amount of work reasonably required would vary widely from case to case.

¶ 39. Setting to one side paragraph (a)(4) for the moment, we note that no evidence regarding any time limitations imposed by Kolupar was presented under paragraph (a)(5).

¶ 40. Paragraph (a)(6) permits the consideration of the nature and length of time of the professional relationship between Kolupar and her attorney. The testimony suggests that the attorney-client relationship extended only to matters involving the particular automobile transaction at issue in this lawsuit. We do not see how the limited nature of their professional relationship would dictate a particular total value for all her attorney's services.

¶ 41. Paragraph (a)(7) speaks to the experience, reputation, and ability of the lawyer performing the services. Kolupar's attorney testified that he had 18 years of experience and had handled similar cases in the

past. Again, this information may buttress the reasonableness of a particular hourly rate, a particular contingent percentage, or a particular fixed fee, but it fails to establish the valuation of an overall fee based on an hourly rate without a companion figure for the amount of hours expended and the tasks performed.

¶ 42. Paragraph (a)(8) addresses whether the fee is fixed or contingent. Here the fee was neither fixed nor contingent, but was calculated at an hourly rate. This only serves to highlight the unhelpfulness of information regarding other factors that support the reasonableness of such a particular hourly rate in the absence of specific documentation about the hours expended.

¶ 43. Judge Cooper's explanation relied almost entirely on "the amount involved and the results obtained" pursuant to paragraph (a)(4), and for good reason. In this case, the primary SCR 20:1.5 factor on which the court had objective and reliable information was paragraph (a)(4). The *Hensley* case discusses this "important" factor at length, and directs that courts ask: "[D]id the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?" 461 U.S. at 434. In evaluating this factor, the Court stated that "the most critical factor is the degree of success obtained." *Id.* at 436. "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Id.* at 435.

¶ 44. Judge Cooper emphasized that the case was over-tried and over-pled: "There is no question this case was over-tried. Discovery was over—well overdone. It was over-[pled] right from the get-go on the complaint. There was the shotgun pleading where everything was [pled] against Wilde short of conquering

24

Europe during World War II. So that was the framework, and the daunting discovery mountain was created right from the get-go. And this was based upon the plaintiff's pleading."

¶ 45. Indeed, Kolupar asserted five claims, one of which was a federal claim that she eventually abandoned because the statute of limitation had long passed. This federal claim would have authorized the court to award treble damages. When Kolupar first itemized her damages in August of 2000, the figure was $10,600 *plus* unspecified repair expenses, interest charges, and financing charges. Absent the amounts for which Kolupar did not provide a specified value,[7] and considering the potential for treble damages, Wilde faced a claim at this time for at least $31,800.

¶ 46. In April, 2001, over a year after Kolupar instigated the litigation, she provided the court a more specific damage calculation. In this new itemization of damages, she sought to recover for:

 1. Loss of use of a reliable motor vehicle, specifically, the 1993 Pontiac Sunbird calculated at a reasonable rental rate for similar vehicle for [a 31-day period].

 2. Judgment against Tammy Kolupar by Waukesha State Bank in the principal amount of $9,155.67, together with interest accruing since May, 1995 at 12% per annum (less an offset for $2,000.00 received by Tammy Kolupar upon sale of the 1985 Mercedes).

 3. Repair costs to the Mercedes (currently known to be $615.76, but investigation continue[s]).

 4. Loan payments and finance charges paid on the Mercedes loan.

---

[7] When amounts were eventually specified for these classes of damages, they were significant. See *infra* note 9.

5. Insurance premiums paid on the Mercedes (believed to be $384.00 for the period 04/28/94 to 06/25/94).

6. Attorneys' fees (accruing)

7. Litigation expenses (accruing).

¶ 47. With respect to the judgment in item 2, the requested sum of $9,155.67, with 12% annual interest calculated from May 1, 1995, through April 13th, 2001 (the date of the itemization), subtracting $2,000,[8] equals $15,976.17. When this amount is added to the other specific figures, the total is $16,975.93. At this time, Kolupar still pursued the federal odometer claim and its treble damages, and, including only the hard numbers and excluding the unvalued itemized damages, this figure multiplied by a factor of three (as per the treble damages under the federal odometer claim) brings the requested damages to a minimum of $50,927.79.

¶ 48. Even after the federal odometer claim was dropped, Kolupar's requested damages were still quite large. In June of 2001, once Kolupar acknowledged that the statute of limitation had run on the federal claim, she submitted to the court an even more specific itemization.[9] The total of all her damages, including a recalculation of the interest as of June 19, 2001, indicates that Kolupar sought $20,719.71. She also asked for approximately $35,000 in attorney fees and costs.

¶ 49. Thus, from both Tammy Kolupar's and Wilde's perspectives, the amounts involved were quite

[8] The $2,000 subtracted represents money received by Tammy Kolupar upon the sale of the 1985 Mercedes.

[9] The actual damages claimed included $2,500 loss of market value for the 1993 Pontiac Sunbird, $16,362.79 for the bank judgment plus interest minus $2,000, $615.76 cost to repair Mercedes, $857.16 in loan payments and finance charges, and $384 in insurance premiums on Mercedes.

large. The $6,600 settlement figure she received was only 32% of her *lowest* itemization of damages, and was only 13% of the $50,927.79 itemized in April of 2001, which parenthetically, did not include all her requested damages. We note that, of the approximately $41,000 in attorney fees that Kolupar sought, $15,000 amounts to approximately 36% of the fees requested. While we do not approve a bright-line rule under which courts simply apply a strict ratio of the amount claimed and the amount of settlement to arrive at a reasonable fee, we do find it significant that the fee in this case constituted a higher percentage of the total sought than the same ratio between the requested damages and the settlement.

¶ 50. The court clearly thought the case was over-pled, contributing to the excessive fees. Wilde was presented with a claim for over $50,000 in damages. The extent of Wilde's exposure may have caused it to adopt an uncompromising attitude with respect to this claim. Thus, to some extent the court was hypothesizing that the over-pleading instigated the contentious litigation that was to follow. This cause-and-effect appears reasonably based, and, in any event, we owe Judge Cooper deference.[10]

¶ 51. While Kolupar's attorney has characterized the $6,600 as an excellent result because he was able to persuade the bank to accept this payment in full satisfaction of the outstanding principal and accumu-

---

[10] Kolupar takes issue with Judge Cooper's reliance on the discovery referee's recommendation. She asserts that it was erroneous for Judge Cooper to consider the discovery referee's opinion. This position misstates the level of reliance apparent from the record. Judge Cooper did not state that he was adopting the recommendation of the discovery referee. Instead, Judge Cooper stated that he *appreciated* his recommendation and *happened to concur.* This is quite separate from a situation where a court abdicates its discretionary authority. We see no

lated interest on her car loan, this is not the type of result with which SCR 20:1.5(a)(4) is concerned. This is indeed a good conclusion for Tammy Kolupar, but not with respect to this lawsuit. It is a good result with respect to any potential litigation she might face over the loan with Waukesha State Bank. With respect to her lawsuit against Wilde, the results obtained were a fraction of the amount she sought, which the court deemed excessive and which perhaps contributed to the protracted litigation.

¶ 52. The circuit court might well have explained its decision with more depth. But as *Hensley* dictates, a court need give only a "concise but clear explanation of its reasons for the fee award when the reasonableness [of the requested fee] is challenged." 461 U.S. at 437. Here, $15,000 is sustainable given the facts of this case and the lack of objective information provided to the trial court. Accordingly, we affirm the fee award.

B. Costs

¶ 53. We note that § 218.01(9)(b) does not authorize a court to award reasonable attorney fees alone; it authorizes a court to award costs, and the costs include reasonable attorney fees. In this case, the court made it clear that it was awarding $15,000 in attorney fees, which included costs. At the conclusion of the fee hearing, the following exchange occurred:

> [THE COURT]: In my discretion I believe that there is entitlement for reasonable attorney's fees on behalf of the plaintiff. *Reasonable attorney's fees in my*

error in acknowledging on the record a knowledgeable court officer's opinion. This is not the same as wholesale adoption of that opinion.

28

*mind of $15,000.* I am ordering $15,000 fee to plaintiff for attorney's fees and costs that was originally submitted as an offer of judgment.

The flip side is Wilde has to swallow whatever fees they have. I think that establishes what the statute intended . . . . There was way too much work done, and there should have been a focus, and much earlier in the proceedings. And there is nobody here with clean hands, so that's the order of the Court. Joint and several.

[KOLUPAR'S ATTORNEY]: As to the costs?

[THE COURT]: *Fees and costs, $15,000.*

(Emphasis added).

¶ 54. The court made a formal finding that $15,000 represented a reasonable attorney fee, but then the court aggregated the cost award as part of the $15,000 award. In effect, the court awarded no costs.

¶ 55. Section 218.01(9)(b) does not state that the court may award costs *or* attorney fees. Costs and attorney fees are linked; the court is authorized to award costs, including a reasonable attorney fee. While the court may retain discretion to award $0 in costs or nominal costs, a decision to do so must be explained. Here, the court offered no explanation. The court may have believed the party's settlement for $6,600 plus taxable costs included the costs requested by Kolupar. Or perhaps the court believed the costs should not be awarded at all. An explanation is required. We therefore remand the matter of costs to the circuit court.

*By the Court.*—The decision of the court of appeals is affirmed in part and the cause is remanded to the circuit court.

¶ 56. DIANE S. SYKES, J., did not participate.

¶ 57. SHIRLEY S. ABRAHAMSON, C.J. (*dissenting*). This is a consumer protection case under a consumer protection law. The consumer in this case has been victimized twice: once by the defendants, the second time by the legal system.

¶ 58. By affirming the fees awarded by the circuit court, the majority opinion contravenes the spirit and letter of the statutes that "were designed to keep open the courthouse doors to persons whose claims do not justify the retention of a lawyer *unless,* by prevailing, that person can recover his or her attorneys fees."[1]

¶ 59. Judge Fine's vigorous dissent in the court of appeals criticizes the defendants for taking advantage of Ms. Kolupar in the car transaction and in delaying and obfuscating the trial gives the reader the flavor of the case.[2] Judge Fine wrote:

> Wilde Pontiac Cadillac, Inc., and its employee Randall Thompson not only took advantage of an eighteen-year-old woman but they also delayed and obfuscated the litigation process. Indeed, from my review of the record, I believe that they pursued a scorched-earth Rambo-litigation policy that has no place in our justice system.[3]

¶ 60. The circuit court compounded the auto dealer's harm to Ms. Kolupar by failing to properly exercise its discretion in awarding reasonable attorney fees and costs.[4]

---

[1] *Kolupar v. Wilde Pontiac Cadillac, Inc.,* 2003 WI App 175, ¶ 32, 266 Wis. 2d 659, 668 N.W.2d 798 (Fine, J., dissenting).

[2] *Kolupar,* 266 Wis.2d 659, ¶ 23 (Fine, J., dissenting).

[3] *Id.*

[4] The method of evaluation of fees is set forth in the majority opinion, ¶¶ 24–29. I agree with the lodestar approach.

¶ 61. The majority opinion delivers the final blow to Ms. Kolupar by affirming the circuit court's erroneous discretionary award of fees.

¶ 62. The majority shifts the blame to Ms. Kolupar for the low award, asserting that the record before the circuit court had a "dearth of hard facts."[5] And whose fault was that?

¶ 63. The dearth of hard facts was caused by the circuit court's refusal to admit Ms. Kolupar's documentation in support of her attorney's fees. Why weren't these documents admitted? Because the circuit court ruled that the submission was late under local court rules. I agree with Judge Fine that the circuit court incorrectly applied Local Rule 365. As Judge Fine wrote:

> The rule, however, governs "motions"; it does not apply to exhibits offered at trials or evidentiary hearings. Kolupar never filed a motion for attorneys fees; the statute permits them and she demanded them in her complaint. Indeed, the trial court *sua sponte* set the hearing on the attorney-fees matter: "We'll all meet back here on the date set for trial to the court on May 13th and we'll consider the attorneys' fee issue."[6]

¶ 64. And even if this local rule applied in the present case (which it does not) and the documents were a few days late, the circuit court's sanction of refusing to admit the documents was too harsh and it was an erroneous exercise of discretion.

¶ 65. Does the majority opinion address the issue of the applicability of the local rule? No! The majority begs off by again placing the blame on Ms. Kolupar,

[5] Majority op., ¶ 31. *See also,* majority op., ¶ 5 (complaining about the sparse information).

[6] *Kolupar,* 266 Wis. 2d 659, ¶ 28 (Fine, J., dissenting).

claiming that Ms. Kolupar did not present the issue in her petition for review and therefore did not preserve the issue for appeal as a matter of right.[7]

¶ 66. I disagree. The petition for review presented the following issue: "Did the trial court erroneously exercise its discretion by failing to apply and consider the correct legal standard?" Included within the stated issue is the question whether the local rule was correctly applied. The petitioner is not required to set forth in the petition for review every argument that she will make in this court.

¶ 67. Moreover, the arguments of the parties did not focus on the state of the record. Neither party complains about the lack of documentation of the attorney's work in the record. As Judge Fine pointed out, "No one [that is, neither the parties nor the circuit court] disputes that Kolupar's lawyer did what he said he did and that his hourly rate was reasonable."[8]

¶ 68. Rather, the briefs debate whether the circuit court considered the correct factors in reaching its decision. Ms. Kolupar's position is that the circuit court did not consider the correct legal standards. The defendant's position is that the circuit court considered the correct factors. Why doesn't the majority opinion hold that the defendants waived any objection to the lack of documentation of attorney fees in the record and to Ms. Kolupar's supposed failure to assert that the local

---

[7] Majority op., ¶ 31. The majority could, of course, exercise its discretion to address the issue but apparently is unwilling to do so. *See* Wis. Stat. § 809.62(6). If it did address the issue, the result of the case would be different.

[8] *Kolupar,* 266 Wis. 2d 659, ¶ 34.

rule was improperly applied?[9] If there is waiver, this court may proceed to decide the substantive issue.

¶ 69. The circuit court based its award of fees on the comments of the discovery master, which were not supported by any facts relating to the work of Ms. Kolupar's attorneys. Judge Fine properly questioned the circuit court's and court of appeals' deferral to the discovery master and the failure of the circuit court to consider on the record any of the factors relating to fees. The former judge appointed to be a discovery master was not appointed to assess the fees. He held no hearings, examined no evidence, and made no findings in regard to fees. Nevertheless, he offered an opinion on fees, which apparently significantly influenced the circuit court. Judge Fine wrote, somewhat harshly but not without justification, as follows:

> Yet, the Majority defers to the unfocused musings by both a former judge, appointed to oversee a small part of the discovery disputes in this case, and the trial court.
>
> . . . .
>
> The trial court here never considered on the record any of the factors [in determining attorney fees]. Rather, it deferred to the off-hand assessment of the former judge who, as the Majority notes, was only appointed to be a discovery master. The trial court's abdication of its responsibility was palpable, as reflected by the transcript in the record. . . . Wilde suggested the $15,000 figure, and the former judge adopted it without any analysis beyond his view that more was not warranted

---

[9] *See State v. Guerard,* 2004 WI 85, 273 Wis. 2d 250, 682 N.W.2d 12; *State v. Evans,* 2004 WI 84, 273 Wis. 2d 192, 682 N.W.2d 784.

because, with Kolupar's acceptance of the $6,600 offer of settlement, the case was 'just barely above a small claims case.'[10]

¶ 70. The discovery master erred in viewing the amount of recovery as determinative of reasonable attorney fees. The amount of the recovery is not a measure of what the fee-shifting award should be in consumer protection cases.[11]

¶ 71. Because the circuit court excluded Ms. Kolupar's supporting documents, relied on the master's unsupported proposed fee of $15,000, and failed to consider the factors the majority sets forth, it erroneously exercised its discretion in awarding only $15,000 in fees. I would reverse the judgment and remand the cause for reconsideration of attorney fees as well as costs, guided by the majority opinion's discussion of fees.

¶ 72. Accordingly, I dissent.

¶ 73. I am authorized to state that Justice ANN WALSH BRADLEY joins this opinion.

[10] *Kolupar,* 266 Wis. 2d 659, ¶¶ 24, 27.

[11] *Shands v. Castrovinci,* 115 Wis. 2d 352, 358, 340 N.W.2d 506 (1983).