**COURT OF APPEALS
DECISION
DATED AND FILED**

**June 9, 2026**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP1551**

Cir. Ct. No. **2020SC13408**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

DANIELLE J. ARMSTRONG,

PLAINTIFF-RESPONDENT,

V.

JILL GILBERT WELYTOK,

DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Milwaukee County: DAVID C. SWANSON, Judge. *Affirmed and cause remanded with directions.*

¶1 GEENEN, J.[1] Jill Welytok appeals the circuit court's judgment awarding her former tenant, Danielle Armstrong, $5,510.96 in compensatory

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(a) (2023-24). All references to the Wisconsin Statutes are to the 2023-24 version.

damages and $34,950.00 in attorneys' fees for violations of consumer protection and landlord-tenant provisions of the Wisconsin Administrative Code, relating to the confiscation of tenant property and the failure to return a security deposit. The circuit court also denied Welytok's counterclaim for damages. Welytok asserts that the court erred as a matter of law when it found in Armstrong's favor because (1) she did not confiscate Armstrong's property "due to" a landlord-tenant dispute; (2) the attorneys' fees were excessive; and (3) she was entitled to judgment on her counterclaim for damages to her property in excess of the amount of Armstrong's security deposit. We disagree and affirm.

## BACKGROUND

¶2      Welytok, a landlord, engaged her tenant, Armstrong, to perform a variety of services at a couple of her rental properties. Armstrong had completed several service jobs for Welytok without incident when an issue arose in late May 2020. Several days after paying Armstrong $775 via PayPal to paint and clean a vacant apartment unit, Welytok requested a partial refund of $500, citing the quality of the work, and proposed accomplishing the refund by reversing $500 of the original PayPal transaction. Armstrong responded to the email and agreed to the refund, but instead of waiting for Welytok to reverse the transaction, immediately sent Welytok $500 via a new, separate PayPal transaction.

¶3      Two weeks after Armstrong completed the refund transaction on PayPal, Welytok used an electronic check (ACH) authorization, which Armstrong had given Welytok in order to make rent payments, to withdraw funds directly from Armstrong's bank account for $795.48—the amount of a $775 PayPal transaction plus service fees. Welytok withdrew the funds without notice to or authorization from Armstrong. Welytok then also disputed the original $775

payment made to Armstrong in its entirety with PayPal, causing PayPal to issue a chargeback of the $775.00 payment. Armstrong demanded that Welytok refund both the ACH withdrawal and the chargeback, but Welytok refused. After Armstrong informed Welytok that she would be suing her and seeking damages, Welytok attempted to send two payments to Armstrong totaling $1,017.70—$552.78 less than what Welytok had taken from Armstrong. Armstrong rejected the transactions.

¶4    Around this same time, Armstrong terminated her lease with Welytok and vacated the apartment. Welytok refused to return Armstrong's security deposit, and sent at least six different accountings of damages in five different amounts that she claimed Armstrong caused, ranging from $2,638 to $4,635.60. Armstrong alleged that the accountings did not accurately reflect the security deposit she paid.

¶5    Armstrong filed a small claims complaint against Welytok, seeking to recoup the unauthorized ACH withdrawal and the PayPal chargeback, and the return of her security deposit. She requested actual damages, exemplary damages, and attorneys' fees. Welytok counterclaimed for damages that she alleged Armstrong caused to the apartment.

¶6    Following a trial, the circuit court found in Armstrong's favor. The court concluded that Welytok violated WIS. ADMIN. CODE § ATCP 134.09(4) (through May 2026)[2] when she seized and held Armstrong's money via unauthorized use of an ACH and the unauthorized PayPal chargeback. The court

---

[2] All references to WIS. ADMIN. CODE § ATCP are to the May 2026 register.

also concluded that Armstrong's monetary losses were the type of losses subject to attorneys' fees and doubling under WIS. STAT. § 100.20(5), and that Armstrong was also entitled to damages in an amount equal to double the amount of her security deposits pursuant to § ATCP 134.06(3) and § 100.20(5). In total, the court awarded Armstrong $3,140.96 related to the funds Welytok took and held; $2,370 for the failure to return the security deposit; and $34,950 in costs and attorneys' fees.

¶7 Welytok appeals.

## STANDARD OF REVIEW

¶8 Welytok concedes that she seized and held $795.48 of Armstrong's money via the ACH, $775 via the PayPal chargeback, and that she did not return Armstrong's security deposit. She contends, however, that the circuit court erred in concluding that her actions violated provisions of WIS. ADMIN. CODE § ATCP 134.[3] Specifically, Welytok challenges the court's conclusions of law involving the unauthorized ACH transaction and chargeback, the withholding of the security deposit pursuant to § ATCP 134.09(4), the application of the double damages statute at WIS. STAT. § 100.20(5), and the availability of attorneys' fees. "We interpret an administrative regulation using the rules of statutory interpretation." *Piper v. Jones Dairy Farm*, 2020 WI 28, ¶13, 390 Wis. 2d 762, 940 N.W.2d 701.

---

[3] WISCONSIN ADMIN. CODE § ATCP 134 "is adopted under authority of [WIS. STAT. §] 100.20," which prohibits unfair methods of competition in business and unfair trade practice. *See* § ATCP 134.01; § 100.20. As a result, "a person who suffers a monetary loss because of a violation of [§ ATCP 134] may sue the violator directly under [§] 100.20(5) and may recover twice the amount of the loss, together with costs and reasonable attorneys' fees." Note, § ATCP 134; *see Kaskin v. John Lynch Chevrolet-Pontiac Sales, Inc.*, 2009 WI App 65, ¶9, 318 Wis. 2d 802, 767 N.W.2d 394.

"[S]tatutory interpretation 'begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry.'" *State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 (citation omitted). "Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." *Id.* The interpretation of statutes and administrative regulations present questions of law that we review de novo. *Phelps v. Physicians Ins. Co. of Wis., Inc.*, 2009 WI 74, ¶36, 319 Wis. 2d 1, 768 N.W.2d 615.

¶9 Welytok also challenges the circuit court's findings of fact. Findings of fact are discretionary determinations we review under the erroneous exercise of discretion standard. WIS. STAT. § 805.17(2); *Kolupar v. Wilde Pontiac Cadillac, Inc.*, 2004 WI 112, ¶22, 275 Wis. 2d 1, 683 N.W.2d 58. We will sustain a discretionary decision if the circuit court relied on a logical rationale and applied the appropriate legal principles and facts of record. *Kolupar*, 275 Wis. 2d 1, ¶22. When the circuit court acts as the finder of fact, it is the ultimate arbiter of the credibility of the witnesses and the weight to be given to their testimony. *Plesko v. Figgie Int'l*, 190 Wis. 2d 764, 775, 528 N.W.2d 446 (Ct. App. 1994). We will not overturn the circuit court's credibility determinations unless the testimony upon which they are based is inherently or patently incredible or in conflict with fully established or conceded facts. *See Global Steel Prods. Corp. v. Ecklund Carriers, Inc.*, 2002 WI App 91, ¶10, 253 Wis. 2d 588, 644 N.W.2d 269.

**DISCUSSION**

**I.     The circuit court correctly concluded that Welytok violated WIS. ADMIN. CODE § ATCP 134.09(4) when she seized Armstrong's property, causing Armstrong to suffer a pecuniary loss.**

¶10     WISCONSIN ADMIN. CODE § ATCP 134.09(4) states that "[e]xcept as provided in [WIS. STAT. §] 704.05(5) … or by express agreement of the parties, a landlord … is prohibited from seizing or holding a tenant's property." Welytok argues that the circuit court erred when it found that the unauthorized ACH withdrawal and PayPal chargeback were seizures of tenant property in violation of § ATCP 134.09(4) because the funds seized were related to the parties' service agreement, making the issue a contract claim instead of a tenant-landlord dispute; and alternatively, because Welytok never seized or held her "tenant's property." Welytok contends that because there was no regulatory violation, the court erred when it awarded double damages for those claims under WIS. STAT. § 100.20(5).

¶11     In support of her assertion that she did not violate the regulation, Welytok claims that she was not acting as a "landlord" when she initiated the ACH withdrawal or chargeback, and instead seized and held funds related to the parties' service agreement. Welytok's argument ignores key facts. Welytok was Armstrong's landlord, and the service relationship between them arose out of their landlord-tenant relationship. Welytok, as Armstrong's landlord, was given limited authorization to utilize ACH for the purpose of withdrawing rent payments only, and thus Welytok was only able to access Armstrong's bank account *because* she was Armstrong's landlord. In addition, Welytok provided no evidence that Armstrong authorized the ACH withdrawal or the PayPal chargeback. Furthermore, the service agreement refund was resolved weeks before the ACH and chargeback occurred. The circuit court correctly determined that Welytok was

acting as Armstrong's landlord when she initiated the ACH withdrawal and the PayPal chargeback, and therefore, her conduct was a violation of WIS. ADMIN. CODE § ATCP 134.09(4).

¶12 Welytok alternatively contends that she never seized or held her "tenant's property," and therefore she did not violate WIS. ADMIN. CODE § ATCP 134.09(4). Though her exact argument is not entirely clear, she asserts that an exception to the code applies, specifically, WIS. STAT. § 704.05(5), which addresses the "disposition of personalty left by [a] tenant" after the tenant vacates or is evicted, because the money she seized was "personalty" left by Armstrong. However, Welytok concedes in the next paragraph of her brief that she seized the money from Armstrong before Armstrong vacated her apartment, and that the money was not "left by" Armstrong. The exception therefore cannot apply.[4] Because no exception applies, we affirm the circuit court's determination that Welytok violated § ATCP 134.09(4).

¶13 Because we agree that Welytok violated WIS. ADMIN. CODE § ATCP 134, the circuit court did not err when it awarded Armstrong double damages, costs, and fees under WIS. STAT. § 100.20(5). As to Welytok's argument that the remedy statute is preempted by the Electronic Fund Transfer Act (EFTA), 15 U.S.C. § 1693 *et seq*,[5] her argument rests on conclusory assertions and is

---

[4] Welytok also appears to argue that money is "personalty" and therefore could not be "tenant's property" under WIS. ADMIN. CODE § ATCP 134.09(4), but whether it is "personalty" is irrelevant. Money is "personal property." *See* WIS. STAT. § 990.01(27) (defining personal property as "money, goods, chattels, things in action, [and] evidences of debt[.]") § ATCP 134.09(4) broadly applies to all tenant property protected unless an explicit exception applies and, here, none does.

[5] In general, the EFTA, 15 U.S.C. § 1693 *et seq*., establishes the "rights, liabilities, and responsibilities" of those participating in electronic fund transfer systems, including the provision of individual consumer rights. 15 U.S.C. § 1693(b).

unsupported by any legal authority. We decline to address undeveloped arguments. *See* *State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992). Welytok fails to establish that the circuit court erred when it awarded Armstrong double damages, costs, and fees under WIS. STAT. § 100.20(5).

**II.     The circuit court correctly concluded that Welytok wrongfully withheld Armstrong's security deposit, and properly denied Welytok's counterclaim.**

¶14     Welytok next takes issue with the circuit court's findings regarding Armstrong's security deposit and Welytok's counterclaim for "damages," which she claimed necessitated withholding Armstrong's deposit. Welytok argues that the court erred when it applied the controlling statutes. She also disputes Armstrong's evidence and testimony.

¶15     A landlord is required to return a tenant's security deposit after the tenant vacates the premises, but may withhold amounts under certain conditions and to repair certain damage, generally beyond ordinary wear and tear. *See* WIS. ADMIN. CODE § ATCP 134.06(3)(a); WIS. STAT. § 704.28. However, a landlord may not "intentionally misrepresent or falsify any claim against a security deposit, including the cost of repairs, or withhold any portion of a security deposit pursuant to an intentionally falsified claim." § ATCP 134.06(4)(b).

¶16     Welytok argues that, when determining whether a landlord's claimed damages are reasonable, a court is required to presume that the evidence the landlord provides is reasonable, unless the tenant proves otherwise. Welytok points to WIS. STAT. § 704.07(3)(a), which in case of damages to leased premises, requires a tenant to reimburse his landlord for the reasonable costs to "remediat[e], repair, or redecorat[e]" the premises, and specifies that "the cost to the landlord is presumed reasonable unless proved otherwise by tenant." According to Welytok,

this means that the court was required to accept as true her unsupported conclusory assertions and problematic, ever-shifting evidence and documentation, despite Armstrong's testimony and evidence to the contrary.[6] Welytok is mistaken.

¶17 The circuit court considered the evidence and testimony of both parties. It found Armstrong's testimony credible and determined that Welytok's claims for damages and resulting withholding of Armstrong's security deposit were not credible, and also, that Welytok's claims were intentionally misrepresented or falsified. While Welytok directs this court to various evidentiary items, we have no basis to revisit the circuit court's credibility determinations. *Estate of Dejmal*, 95 Wis. 2d 141, 151, 289 N.W.2d 813 (1980) (holding that the circuit court, as the finder of fact, is the sole arbiter of the weight and credibility of the evidence).

¶18 Thus, the circuit court correctly denied Welytok's counterclaim, concluding that Welytok violated WIS. ADMIN. CODE § ATCP 134 and that Armstrong was therefore entitled to double the amount of her pecuniary loss, which, in this case, was the full amount of her security deposit.

---

[6] Indeed, many of Welytok's arguments are insufficiently developed. To the extent Welytok's brief raises any arguments not addressed herein, we reject them as inadequately briefed and/or unsupported by legal authority. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992).

**III.     The circuit court did not erroneously exercise its discretion when it awarded Armstrong attorneys' fees.**

¶19     Finally, Welytok argues that the circuit court erroneously exercised its discretion[7] when it awarded Armstrong attorneys' fees in the amount of $34,950.00. Welytok argues that the court failed to make the findings required to demonstrate that the award was reasonable under WIS. STAT. § 814.045(2)(a), which generally limits an award of "reasonable attorneys' fees" to no more than three times the amount of the compensatory damages award unless "the court determines … that a greater amount is reasonable" after considering fifteen enumerated statutory factors in § 814.045(1), including the time and skill required to litigate, customary fees, and the amount of damages in the case.

¶20     Welytok claims that the circuit court failed to make a record demonstrating that it had considered all of the statutory factors, and therefore the award represents an erroneous exercise of discretion in calculating the amount of attorneys' fees. This argument, however, ignores that the statute does not require that the court explicitly state its findings on the record as to each and every one of the enumerated factors; it simply requires that the court consider each of them.

¶21     "When a circuit court awards attorneys fees, the amount of the award is left to the discretion of the court." *Kolupar*, 275 Wis. 2d 1, ¶22. Further, "[t]he court on appeal will also assume when a finding is not made on an issue which appears from the record to exist, that it was determined in favor of or in

---

[7] Welytok cites a 1961 case in support of the assertion that the reasonableness of attorneys' fees is reviewed de novo, however, subsequent cases have all consistently adopted the *lodestar* method of calculation, which multiplies the number of reasonable hours by a reasonable rate and then adjusts the resulting number up or down to account for specific circumstances of the case. *See **Kolupar v. Wilde Pontiac Cadillac, Inc.***, 2004 WI 112, ¶¶29-30, 275 Wis. 2d 1, 683 N.W.2d 58.

support of the judgment." *Sohns v. Jensen*, 11 Wis. 2d 449, 453, 105 N.W.2d 818 (1960).

¶22    The record reflects that the circuit court properly exercised its discretion. It specifically considered the number of hours counsel claimed to have worked on the case; the reasonable rate of legal work completed by an attorney with counsel's level of experience on similar matters in the legal market; that Armstrong had prevailed in the action and was awarded damages; the duration of the case and the time and amount of legal work involved; and whether counsel was precluded from taking other cases due to his work on the present case, as well as whether the rate was on a fixed or contingent basis.

¶23    We further take judicial notice that the record reflects that Welytok filed many motions and other documents in the case, including motions to dismiss, motions to file briefs or for other various relief, motions to vacate orders, a motion for summary judgment, and a motion to stay the case based on a belated subject matter jurisdiction challenge, among others.[8] This along with Welytok's other conduct caused Armstrong to seek sanctions against Welytok for causing unnecessary delay and needlessly increasing the cost of litigation.

¶24    Applying the deferential erroneous exercise of discretion standard, we conclude that the record clearly demonstrates that the court used a demonstrated, rational process that overcame any presumption that would have

---

[8] This is a pattern that Welytok has repeated on appeal. The notice of appeal was filed in this case in September of 2022. There were at least seven motions filed to extend the time to file an appellant's brief, as well as motions to supplement the record, to correct the record, and motions to compel. Briefing was completed and the case was transmitted to this court in December of 2025.

been granted by WIS. STAT. § 814.045(2)(a). "We give deference to the circuit court's decision because the circuit court is familiar with local billing norms and will likely have witnessed first-hand the quality of the service rendered by counsel." *Kolupar*, 275 Wis. 2d 1, ¶22. We do not see any erroneous exercise of the circuit court's discretion on this issue.

¶25 Finally, Welytok argues that Armstrong should not have been awarded attorneys' fees for those hours which were spent on pursuing claims on which Armstrong did not succeed. However, those claims relied on a common core set of facts upon which Armstrong's successful WIS. ADMIN. CODE § ATCP 134 claims also relied. When a plaintiff's claims "involve a common core of facts or [are] based on related legal theories," the court is not required to disentangle the claims to somehow separate the hours on which the attorney spent on each claim. *See Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983). The circuit court recognized this principle when it found that Armstrong had prevailed in the action as to all damages claimed, except for those for which damages overlapped or were claimed in the alternative. We therefore reject Welytok's claim on this point.

### IV. Armstrong is entitled to appellate attorney fees.

¶26 The last point which we address is whether Armstrong is entitled to appellate attorneys' fees. Armstrong cites to *Shands v. Castrovinci*, 115 Wis. 2d 352, 340 N.W.2d 506 (1983), for the proposition that she, as a tenant who has suffered a pecuniary loss because of a violation of WIS. ADMIN. CODE § ATCP 134, should "recover reasonable attorney fees for appellate review undertaken to attack or defend a [circuit] court's decision in the suit." *Shands*, 115 Wis. 2d at 359. Armstrong asks this court to remand the matter to the circuit court, directing that it determine a reasonable attorneys' fee award for this appeal.

¶27 "[P]rivate tenant actions are an integral part of the enforcement of [WIS. ADMIN. CODE §] ATCP [ ] 134." ***Baierl v. McTaggart***, 2001 WI 107, ¶32, 245 Wis. 2d 632, 629 N.W.2d 277. "[F]ailure to award reasonable attorney fees and reasonable costs to a prevailing plaintiff … in appellate proceedings would discourage litigants with legitimate claims from pursuing their right to an appeal." ***Kolupar v. Wilde Pontiac Cadillac, Inc.***, 2007 WI 98, ¶57, 275 Wis. 2d 1, 735 N.W.2d 93. "To permit the recovery of attorney fees for successful appellate work is simply to recognize that an attorney's effort at that stage is as essential to the tenant's success as is an attorney's work at the [circuit] court level." ***Shands***, 115 Wis. 2d at 359. Welytok has not provided this court with a developed argument that convinces us that Armstrong should not be entitled to appellate attorneys' fees. We therefore grant Armstrong's request of reasonable attorneys' fees and reasonable costs for this appeal, and we direct the circuit court on remand to determine and award such fees and costs.

## CONCLUSION

¶28 For the aforementioned reasons, we affirm the judgment of the circuit court. Upon remand, we direct the circuit court to determine reasonable attorneys' fees and costs for this appeal.

*By the Court.*—Judgment affirmed and cause remanded with directions.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

13