Shawn JOHNSON, Plaintiff-Appellant,

v.

ROMA II - WATERFORD LLC and Roma's E.T., Inc.,
Defendants-Respondents.

Court of Appeals

*No. 2012AP1028. Submitted on briefs November 19, 2012.
—Decided February 7, 2013.*

2013 WI App 38

(Also reported in 829 N.W.2d 538.)

612

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Sally A. Piefer* of *The Schroeder Group, S.C.*, Waukesha.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Kathryn A. Keppel* and *Erin M. Strohbehn* of *Gimbel, Reilly, Guerin & Brown LLP*, Milwaukee.

Before Higginbotham, Blanchard and Kloppenburg, JJ.

¶ 1. BLANCHARD, J. This case involves claims for unpaid wages under both the Federal Labor Standards Act (the "Act") and Wisconsin wage law. A jury awarded Shawn Johnson $3,648 in compensation for unpaid wages from her employer for the employer's failure to pay her at the minimum wage rate for a period of time.[1] The circuit court denied Johnson's postverdict requests for "liquidated damages" under the Act and for a penalty under a provision in the state wage law. In addition, the court awarded Johnson only $10,000 of her requested $112,000 in attorney's fees under fee-shifting provisions in the Act and the state law.

¶ 2. Johnson appeals the resulting judgment. She argues that the circuit court erroneously exercised its discretion in denying her request for the liquidated damages and the penalty, and in awarding her only $10,000 in attorney's fees. For the reasons explained below, we agree. However, we may not exercise the

---

[1] The respondents in this appeal are restaurant-related business entities, Roma II – Waterford LLC, and Roma's E.T., Inc. We recognize that, in prior proceedings, the parties disputed which Roma entity or entities were proper parties to Johnson's claims, but that dispute is not material to our resolution of this appeal. For purposes of this appeal, we refer to the employer simply as "Roma" for ease of reference.

circuit court's discretion on these topics, and therefore we reverse and remand for the court to reexamine each of these issues in a manner consistent with our decision.

## BACKGROUND

¶ 3. This case has a relatively lengthy factual and procedural history, but we need not describe that history in great detail for purposes of the issues on appeal. Instead, we provide a limited set of background facts and reference additional facts as needed in the discussion below.

¶ 4. Johnson began working for Roma as a waitress in 2003 and soon became a manager or "operator" of one of Roma's restaurants. At some point, Johnson concluded that she had been inadequately compensated for a period of time, in violation of federal and state wage laws. She resigned from Roma and retained an attorney.

¶ 5. In September 2006, Johnson filed an administrative complaint with the Wisconsin Department of Workforce Development (the "department"). She alleged that Roma owed her $9,500 in unpaid wages.

¶ 6. In April 2007, the department issued its final decision. The department's decision included findings in favor of Johnson and a "request[]" that Roma pay Johnson $8,155.53 in compensation, less appropriate payroll withholding amounts.

¶ 7. Roma declined to pay the compensation requested by the department, and Johnson filed a complaint in circuit court in September 2007. Johnson's complaint alleged wage claims under the Act and state wage law, unjust enrichment, and promissory estoppel.

¶ 8. Johnson obtained a default judgment against Roma in 2008, but the judgment was reversed on appeal. *See Johnson v. Roma II - Waterford, LLC*, No.

2008AP1396, slip op. (WI App Apr. 08, 2009). On remand, the circuit court denied motions for summary judgment, and the case proceeded to a jury trial in April 2010. After the jury returned its verdict, the circuit court concluded that the verdict was hopelessly inconsistent and ordered a new trial.

¶ 9. At the second trial, in November 2010, the jury found: that Roma failed to pay Johnson at the minimum wage rate for a period of her employment with Roma; that as a result Roma owed Johnson $3,648 in compensation; and that Roma was liable to Johnson for an additional $9,287.40 in damages relating to her other claims.[2]

¶ 10. Johnson filed a postverdict petition seeking additional relief from the circuit court. The requested relief included liquidated damages that would double the amount of the verdict under a provision in the Act, 29 U.S.C. § 216(b), and, separately, a penalty as allowed under a provision in the state wage law, WIS. STAT. § 109.11(2)(b) (2011–12).[3] In addition, Johnson requested approximately $112,000 in attorney's fees under fee-shifting provisions in 29 U.S.C. § 216(b) and WIS. STAT. § 109.03(6).

¶ 11. As noted above, the circuit court denied Johnson's request for liquidated damages under 29 U.S.C. § 216(b) and the penalty under WIS. STAT. § 109.11(2)(b).[4] The court awarded Johnson $10,000 of her attorney's fees.

---

[2] Johnson's other claims relate to Johnson's purchase of a freezer for Roma and a loan that Johnson made to Roma.

[3] All references to the Wisconsin Statutes are to the 2011–12 version unless otherwise noted.

[4] Based on a concession by Roma in the circuit court, the court ordered a separate penalty under the "Employment Regulations" chapter of the statutes, WIS. STAT. ch. 103, in an amount of $2,820, specifically a penalty as allowed under WIS. STAT.

## DISCUSSION

¶ 12. The parties in their briefing address the liquidated damages and penalty issues before the attorney's fees issue, but we conclude that our discussion will be better facilitated by analyzing the attorney's fees issue first. We therefore begin with that issue.

*A. Attorney's Fees*

¶ 13. As indicated above, the circuit court awarded Johnson only $10,000 of the approximately $112,000 in attorney's fees that Johnson incurred and requested.[5] Johnson argues the court erroneously exercised its discretion because the court's decision fails to demonstrate a reasonable basis for this greater than ninety percent reduction in her request. We agree.

¶ 14. Both 29 U.S.C. § 216(b) and WIS. STAT. § 109.03(6) provide for an award of attorney's fees to a prevailing plaintiff in a wage claim case such as Johnson's. More specifically, 29 U.S.C. § 216(b) provides that "[t]he court . . . shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of

§ 103.005(12). That penalty under § 103.005(12) is not at issue in this appeal. In the remainder of this opinion, when we refer to a "penalty," we mean only the type of penalty allowed under WIS. STAT. § 109.11(2)(b), a provision in the Wisconsin wage claim law. Roma does not argue that its obligation to pay the penalty under ch. 103 for any reason obviates its potential obligation to pay a penalty under WIS. STAT. ch. 109.

[5] The $112,000 figure does not include a comparatively small amount of additional attorney's fees that Johnson anticipated she would incur after filing her petition for postverdict relief. However, we refer to the $112,000 figure because that is the figure the parties reference in their briefing.

the action." Section 109.03(6) provides that "the court may allow the prevailing party, in addition to all other costs, a reasonable sum for expenses." This provision has been interpreted to include a prevailing employee's attorney's fees. *See Jacobson v. American Tool Cos.*, 222 Wis. 2d 384, 398–99, 401, 588 N.W.2d 67 (Ct. App. 1998).

¶ 15. Initially we note that the federal statute provides that the court "shall" allow reasonable attorney's fees, while the state statute provides that the court "may" allow reasonable expenses, which includes attorney's fees. However, neither Johnson nor Roma argues that this difference matters for purposes here, where both statutes apply and where the only dispute as to attorney's fees now before us is whether the *amount* of fees that the court awarded was reasonable.

¶ 16. It is undisputed that the amount of the attorney's fees awarded is a discretionary decision for the circuit court. *See Bankston v. State of Illinois*, 60 F.3d 1249, 1255 (7th Cir. 1995); *Kolupar v. Wilde Pontiac Cadillac, Inc.*, 2004 WI 112, ¶ 22, 275 Wis. 2d 1, 683 N.W.2d 58. A reasonable exercise of discretion requires that the court use "a logical rationale based on the appropriate legal principles and facts of record." *Kolupar*, 275 Wis. 2d 1, ¶ 22 (citation omitted).

¶ 17. In addition, it is undisputed that, in exercising this discretion in the context of a fee-shifting statute as here, the circuit court must use the "lodestar" approach. *See Bankston*, 60 F.3d at 1255; *Lynch v. Crossroads Counseling Ctr., Inc.*, 2004 WI App 114, ¶ 41, 275 Wis. 2d 171, 684 N.W.2d 141. "Under the lodestar approach, the starting point is the number of hours reasonably expended, multiplied by a reasonable

hourly rate, with upward or downward adjustments then made after taking other relevant factors into account." *Lynch*, 275 Wis. 2d 171, ¶ 35. The "other relevant factors" include but are not limited to the factors set forth in the rule of professional responsibility that addresses the fees that attorneys are ethically permitted to charge, SCR 20:1.5. *See Lynch*, 275 Wis. 2d 171, ¶ 41.[6]

¶ 18. In her postverdict petition, Johnson addressed the legal standards for awarding attorney's fees, including the lodestar approach. She also submitted a detailed affidavit with attachments that included

---

[6] The factors in SCR 20:1.5(a) include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

It is apparent that many of these factors could additionally be considered under the first part of the lodestar approach, which, as indicated above, is based on "the number of hours *reasonably* expended, multiplied by a *reasonable* hourly rate." *See Lynch v. Crossroads Counseling Ctr., Inc.*, 2004 WI App 114, ¶ 35, 275 Wis. 2d 171, 684 N.W.2d 141 (emphasis added).

twenty-five pages of itemized billing records. Those records showed that her attorneys worked approximately 480 hours from April 2006 to December 2010.[7] The affidavit and attachments further showed that the bulk of the work was performed by attorneys specializing in employment law at the law firm Johnson retained, with rates ranging from $160 to $250 per hour, depending on the attorney's experience.

¶ 19. In addition, Johnson submitted to the circuit court the affidavit of an experienced employment law attorney from another law firm. That attorney averred that Johnson's attorney's rates were reasonable, that the work her attorney performed was necessary for proper presentation of Johnson's case, and that the number of hours expended was reasonable.

¶ 20. Roma did not submit evidentiary materials to the contrary. However, Roma objected on several grounds, including over-litigation, to Johnson's request for fees.

¶ 21. In addressing Johnson's request for attorney's fees, the circuit court made no express reference to the lodestar approach. As the bases for its decision, the circuit court found that (1) the litigation had been emotionally driven, apparently as a result of a prior romantic relationship between Johnson and Roma owner Mark Galluzzo, and (2) both parties had been "extremely loose" in handling financial aspects of the business. As to the relationship aspect, the court compared the case to a divorce, concluding that Johnson and Galluzzo both allowed their emotions to "basically guide[] their behavior and demeanor throughout the lawsuit, bumping up fees that should never have gone

---

[7] Some of the work was performed by paralegals, but the parties do not suggest that this time is not compensable or otherwise makes any difference in our analysis.

this far." In other words, the court concluded, in part, that awarding Johnson only $10,000 in attorney's fees was justified by the parties' mutual over-litigation of what should have been a less emotional legal case. As to the manner in which the parties handled restaurant finances, the court found that "[b]oth parties were free to enter the cash register and remove sums of money that were not reported, pretty much at will."

¶ 22. Before addressing the circuit court's rationales of over-litigation based on emotion and "loose" financial dealing, we begin by noting that the court's decision does not suggest that the court questioned the reasonableness of Johnson's attorney's hourly *rates*. Indeed, Roma concedes that it did not dispute those rates in the circuit court, and does not dispute them now. Thus, the question is limited to whether the court reasonably reduced, by over ninety percent, the number of hours of attorney time awarded to Johnson.

¶ 23. Returning to the court's two rationales, we first conclude that Johnson fails to persuade us that either of those rationales is not a legitimate potential basis on which to reduce the amount of hours for which attorney's fees should be awarded. Under the first rationale, a court may reduce attorney's fees for a party by a particular amount that represents legal work generated by or driven by the party's emotional, and not by factual or legal, approaches to a dispute. Under the second rationale, a court may reduce fees by a particular amount for a party if those fees represent legal work necessitated by that party's sloppy or excessively casual methods of doing business. Both rationales describe a type of over-litigation, which clearly constitutes a legitimate basis, under the lodestar approach, to reduce the amount of hours for which attorney's fees should be

awarded. *See, e.g., Lewis v. Hurst Orthodontics, PA*, 292 F. Supp. 2d 908, 909, 913 (W.D. Tex. 2003) (reducing attorney's fees award in a Federal Labor Standards Act case based, in part, on over-litigation); *see also Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1301 (11th Cir. 1988) (when using the lodestar approach, " 'excessive, redundant or otherwise unnecessary' hours should be excluded from the amount claimed") (citation omitted); *Lynch*, 275 Wis. 2d 171, ¶ 35 (lodestar approach involves "number of hours *reasonably* expended") (emphasis added).

¶ 24. Thus, the problem here is not a lack of potentially legitimate reasons for at least some reduction in the attorney's fees award. Instead, as discussed further below, the problem is that we lack an explanation or pertinent record evidence to support the particular substantial reduction made by the circuit court.

¶ 25. We ordinarily defer to a circuit court's determination as to hours awarded. "An attorney's hours are subject to the scrutiny of the court and unreasonable hours should not be compensated." *People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307, 1314 (7th Cir. 1996). Moreover, the circuit court's determinations that the parties over-litigated and were "loose" in their financial dealing are findings of fact to which we defer unless shown to be clearly erroneous. *See Royster-Clark, Inc. v. Olsen's Mill, Inc.*, 2006 WI 46, ¶ 11, 290 Wis. 2d 264, 714 N.W.2d 530. Johnson does not make a showing of clear error.

¶ 26. Nonetheless, we must "probe the court's explanation to determine if the court 'employ[ed] a logical rationale based on the appropriate legal principles and facts of record.' " *Kolupar*, 275 Wis. 2d 1, ¶ 22 (citation omitted). "The record ought to assure us

that the [trial-level] court did not 'eyeball' the fee request and 'cut it down by an arbitrary percentage because it seemed excessive to the court.' " *People Who Care*, 90 F.3d at 1314 (citation omitted); *see also Crawford Cnty. v. Masel*, 2000 WI App 172, ¶ 16, 238 Wis. 2d 380, 617 N.W.2d 188 (circuit court must not simply "eyeball[]" a fee request or "reduce[] a fee request by the prevailing party without evidence to support the reduction").

¶ 27. Here, when we consider the court's fact findings and probe its reasoning, we conclude that they are insufficient to explain the $10,000 award. The court's decision does not demonstrate a logical connection between its limited findings and the ninety-percent reduction in the number of attorney hours awarded. Rather, the court appeared to "eyeball" a figure of $10,000 in light of its findings that the parties over-litigated their case and engaged in "loose" financial dealings.

¶ 28. Our conclusion is supported by *Lynch*, another case in which we reversed a circuit court's discretionary award of attorney's fees. *See Lynch*, 275 Wis. 2d 171, ¶ 2. There, the court accepted the asserted hourly rate but reduced a requested award by about half based on a number of findings, including that the legal issues involved were not novel or difficult and that a high level of attorney skill was not required. *Id.*, ¶¶ 15–16, 42. We concluded, in part, that those findings failed to indicate "what amount of time was reasonably necessary" or to show that "the amount of time . . . counsel spent was not reasonable." *Id.*, ¶ 43.

¶ 29. We recognized in *Lynch* that the circuit court was "better situated than we are to discern unnecessary expenditures." *Id.* We explained, however, that, "without the aid of more specific comments, we are unable to tell from the record which expenditures of time the court viewed as unnecessary or excessive." *Id.*

We concluded that "nothing in the record explains why approximately half of the attorney's time was unnecessary." *Id.* We stated that "[w]e are not suggesting that the circuit court needs to itemize each entry it determines is unnecessary, but some explanation of the unnecessary tasks is needed to assist us in reviewing the circuit court's decision." *Id.*, ¶ 44.

¶ 30. As explained above, and as in *Lynch*, the circuit court here made findings that may well have supported some reduction in the requested award. However, the court failed to make specific comments, based on those findings, explaining what aspects of the litigation were unnecessary or excessive due to emotional actions or sloppy bookkeeping. We are therefore unable to discern whether the reduction the court made was reasonably supported by those findings.

¶ 31. Roma seems to argue that *Kolupar* is more factually analogous than *Lynch*. We disagree. In *Kolupar*, the party seeking attorney's fees failed to produce adequate documentation showing the number of attorney hours. *Kolupar*, 275 Wis. 2d 1, ¶ 31. Here, in contrast, Johnson submitted materials that are a model of thorough documentation.

■■

¶ 32. There is another reason why we conclude that the circuit court erroneously exercised its discretion, namely, that the decision appears to turn the purpose of the fee-shifting provisions on its head. The purpose of the fee-shifting provisions at issue is to encourage wage claimants to bring meritorious claims and to help ensure that successful claimants are made whole. *See, e.g., Fegley v. Higgins*, 19 F.3d 1126, 1134–35 (6th Cir. 1994) ("The purpose of the [Federal Labor Standards Act] attorney fees provision is 'to insure effective access to the judicial process by provid-

ing attorney fees for prevailing plaintiffs with wage and hour grievances.' ") (citation omitted); *Roman v. Maietta Constr., Inc.*, 147 F.3d 71, 76–77 (1st Cir. 1998) (the plaintiff in a case under the Act is " 'entitled to be made whole' "); *Jacobson*, 222 Wis. 2d at 401 (suggesting that the purpose of the attorney's fees provision in WIS. STAT. § 109.03(6) is to make a successful wage claimant whole).

¶ 33. Here, so far as we can discern, the court's findings of fact place equal blame on Johnson and Roma for both over-litigation and "loose" financial dealings. Yet, the court's award of only $10,000 in attorney's fees seems to have effectively placed almost all of the blame on Johnson, without an explanation as to why this is appropriate. It is difficult to see how the court's approach could be a reasonable exercise of discretion, at least absent additional explanation.

¶ 34. Roma makes a number of assertions which, in Roma's view, provide an alternative reasonable basis on which to uphold the circuit court's $10,000 attorney's fees award. Roma correctly points out that we "generally look for reasons to sustain discretionary decisions," and that, "[w]hen the trial court's reasoning is inadequate or incomplete, we may independently review the record to look for additional reasons to support the court's exercise of discretion." *See Wolnak v. Cardiovascular & Thoracic Surgeons of Cent. Wis.*, 2005 WI App 217, ¶ 55, 287 Wis. 2d 560, 706 N.W.2d 667. Thus, we consider Roma's assertions.

¶ 35. Roma's assertions include: that Johnson failed to apportion the attorney hours spent on her non-wage claims; that Johnson's requested attorney's fees were grossly out of proportion to the amount of Johnson's recovery on her wage claims; that Johnson

had only limited success on her claims; that Johnson's attorney spent sixty-five hours pursuing a default judgment that was later reversed on appeal; that Johnson's attorney spent sixty-six hours on a summary judgment motion, even though there were genuine issues of material fact; and that Johnson's attorney spent fifty hours on the first trial, which Roma concedes was "necessary" work when performed but which Roma asserts should be disregarded because the verdict in that trial was not favorable to Johnson.

¶ 36. Johnson asserts in reply that case law shows: that apportionment of fees is not required when claims arise out of a "common core of facts"; that there are published cases in which the award of attorney's fees is similarly disproportionate to the plaintiff's recovery; that Roma misconstrues the extent of Johnson's success on her claims; and that Roma's assertions regarding over-litigation ignore Roma's own role in driving the litigation.

¶ 37. It is apparent to us from the parties' competing assertions that we are unable in this case to uphold the circuit court's award of attorney's fees on some alternative basis. Addressing the parties' assertions would require us to exercise the circuit court's discretion for it by balancing multiple discretionary factors after choosing from competing factual inferences. This we cannot do. *See Milwaukee Women's Med. Serv., Inc. v. Scheidler*, 228 Wis. 2d 514, 528 n.5, 598 N.W.2d 588 (Ct. App. 1999) (citing *Barrera v. State*, 99 Wis. 2d 269, 282, 298 N.W.2d 820 (1980)) (an appellate court must not exercise the circuit court's discretion).

¶ 38. Accordingly, we conclude that the proper course is for the circuit court to reexamine the attorney's fees issue on remand and to exercise its discretion using the lodestar approach in a manner consistent with our

decision. *See Lynch*, 275 Wis. 2d 171, ¶ 50 ("Because the circuit court erroneously exercised its discretion in determining a reasonable attorney fee, we reverse and remand for a determination of a reasonable fee consistent with this opinion.").[8]

### B. *Liquidated Damages and Penalty*

¶ 39. We turn to the remaining issues of liquidated damages under 29 U.S.C. § 216(b) and the penalty under WIS. STAT. § 109.11(2)(b). Johnson argues that the circuit court erroneously exercised its discretion in denying her request for both liquidated damages and the penalty. We agree.

¶ 40. Section 216(b) of Title 29, U.S.C., provides that an employer who violates pertinent provisions of the Act "*shall* be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, . . . *and in an additional equal amount as liquidated damages*." (Emphasis added.) However, 29 U.S.C. § 260 provides an exception "if the employer shows to the satisfaction of the court that the act or omission giving rise to [the] action was in good faith and that [the employer] had reasonable grounds for believing that [the] act or omission was not a violation of the . . . Act."

---

[8] We recognize that the circuit court judge who presided over Johnson's request for attorney's fees is deceased. Nonetheless, the circuit court on remand will be in a better position than this court to further address the issues on which we remand. Separately, we note that Johnson seeks attorney's fees for this appeal and that Roma concedes that such fees may be allowable. Both parties recognize, however, that the amount of the award of fees for this appeal should be determined in the first instance by the circuit court on remand.

¶ 41. The interaction of 29 U.S.C. §§ 216(b) and 260 has been described as follows. "Th[e] statute makes liquidated damages mandatory unless the [trial-level] court finds that the defendant-employer was acting in good faith and reasonably believed that its conduct was consistent with the law." *Shea v. Galaxie Lumber & Constr. Co.*, 152 F.3d 729, 733 (7th Cir. 1998). "The employer bears the burden of proving both good faith and reasonable belief." *Id.* "Although in the final analysis we review a [trial-level] court's decision on liquidated damages for abuse of discretion, that discretion must be exercised consistently with the strong presumption under the statute in favor of doubling." *Id.*; *see also Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 310 (7th Cir. 1986) (referring to the "strong presumption" in favor of doubling damages).

¶ 42. When relying on 29 U.S.C. § 260 to avoid liquidated damages under 29 U.S.C. § 216(b), employers face a burden that has been characterized as "substantial." *Bankston*, 60 F.3d at 1254. "Doubling [damages] is the norm, not the exception." *Uphoff v. Elegant Bath, Ltd.*, 176 F.3d 399, 405 (7th Cir. 1999).

¶ 43. Turning to the Wisconsin provision, WIS. STAT. § 109.11 is entitled "Penalties" and provides in paragraph (2)(b), as pertinent here, that "a circuit court *may* order the employer to pay to the employee, in addition to the amount of wages due and unpaid to an employee . . ., increased wages of not more than 100% of the amount of those wages due and unpaid." (Emphasis added.)

¶ 44. This court has explained that WIS. STAT. § 109.11(2)(b) "does not require a court to impose a penalty but authorizes a court to do so in the exercise of

its discretion." *Lynch*, 275 Wis. 2d 171, ¶ 31; *see also Hubbard v. Messer*, 2003 WI 145, ¶ 22, 267 Wis. 2d 92, 673 N.W.2d 676 ("the legislature granted circuit courts discretion to award civil penalties"). The court has further explained that "[o]nly wrongful withholding of wages for dilatory or other unjust reasons should be penalized." *Wolnak*, 287 Wis. 2d 560, ¶ 54.

¶ 45. As a preliminary matter relating to the applicable legal standards, Johnson asserts that the Wisconsin statute fails to specify what standard the circuit court should use to determine whether a penalty is warranted. She argues that we should therefore apply the federal statutory framework on doubling to the Wisconsin penalty statute. In other words, Johnson argues that the circuit court should be required to impose a penalty under WIS. STAT. § 109.11(2)(b) unless the employer shows both "good faith and reasonable belief." We disagree with Johnson on this point.

¶ 46. First, as already indicated above, and as Roma correctly points out, the court in *Wolnak* has specified the substantive standard that applies under the Wisconsin statute. Before a circuit court may exercise its discretion to award a penalty, the record must show "wrongful withholding of wages for dilatory or other unjust reasons." *Wolnak*, 287 Wis. 2d 560, ¶ 54. While there may be substantial overlap between the federal "good faith and reasonable belief" standard, *see Shea*, 152 F.3d at 733, and the state "dilatory or other unjust reasons" standard, *see Wolnak*, 287 Wis. 2d 560, ¶ 54, that overlap does not persuade us that it would be proper to graft the federal presumption and burden-shifting framework onto the Wisconsin statutory scheme.

¶ 47. Second, neither the text of WIS. STAT. § 109.11(2)(b) nor the case law interpreting it appear to

631

support applying the federal "strong presumption" of double damages and burden-shifting framework to § 109.11(2)(b). Rather, that text and case law make clear that the circuit court has broad discretion under § 109.11(2)(b) to choose not to award a penalty and that, even when a penalty is appropriate, the court has discretion to award a penalty amounting to less than double damages. *See* § 109.11(2)(b) (referring to penalty "of *not more than* 100% of the amount of those wages due and unpaid") (emphasis added). In short, the circuit court's discretion under § 109.11(2)(b) is broader than the court's discretion under the federal statute. As the court in *Hubbard* stated, "[a] circuit court ultimately has discretion [under § 109.11(2)(b)] to award few or no civil penalties." *Hubbard*, 267 Wis. 2d 92, ¶ 40.

¶ 48. In a related argument, Johnson asserts that "the *Hubbard* court concluded that an employee is *entitled* to the civil penalty [under the Wisconsin statute] if the wages are due and unpaid at the time the employee commences his/her action in court." (Emphasis added.) However, *Hubbard* does not contain this asserted conclusion. Rather, *Hubbard* makes clear that the due and unpaid status of wages at the time an action is commenced is a necessary, but not sufficient, condition for imposing a corresponding penalty under Wis. Stat. § 109.11(2)(b). *See Hubbard*, 267 Wis. 2d 92, ¶ 42.

¶ 49. Having resolved this preliminary matter against Johnson, we nonetheless agree with Johnson that the circuit court erroneously exercised its discretion under both the federal and state statutes. As indicated above, a discretionary decision must show that the court used "a logical rationale based on the

appropriate legal principles and facts of record." *See Kolupar*, 275 Wis. 2d 1, ¶ 22 (citation omitted).

¶ 50. Here, the circuit court provided essentially *no* rationale for denying liquidated damages under the federal statute or for denying the penalty under the state statute. The court's only statement in reference to Johnson's requests for either the liquidated damages or the penalty was to state that "I'm satisfied that the basis of the Court's ruling is supported by the facts and the law." We thus have no way of knowing whether the circuit court applied the legal standards above to the relevant facts of record in a logical manner.

¶ 51. Roma may be arguing that the circuit court denied liquidated damages, the penalty, or both based on the court's findings and reasoning pertaining to its decision on attorney's fees. However, we conclude that a more reasonable reading of the record is that the court simply failed to provide any reasoning for its rulings on the liquidated damages and penalty.

¶ 52. Moreover, even if we considered the circuit court's reasoning as to attorney's fees, that reasoning is insufficient to demonstrate that the court made the conclusions required to deny the liquidated damages and penalty. That is, the court's reasoning as to attorney's fees does not demonstrate that the court concluded that Roma acted in good faith and with a reasonable belief that Roma was complying with the law, nor does it demonstrate whether the court concluded that Roma was not dilatory or otherwise unjust in its actions. Indeed, the court's findings, at least without additional explanation, may easily be read to imply the opposite.

¶ 53. As with the attorney's fee issue, Roma makes several assertions which, in its view, provide alternative reasonable bases for upholding the circuit

court's rulings on the liquidated damages and the penalty, and Johnson replies with competing assertions. As with the attorney's fees issue, it is again apparent to us from the parties' competing assertions that we are unable to uphold the circuit court's discretionary decision on some alternative basis. Addressing the parties' assertions would require us to exercise the circuit court's discretion for it. Therefore, we cannot agree with Johnson that it would be appropriate for us to direct on remand that the circuit court must impose liquidated damages, the penalty, or both. Rather, we remand for the circuit court to reexamine the liquidated damages and penalty issues in a manner consistent with our decision.

¶ 54. If, on remand, the circuit court concludes that the pertinent conduct by Roma was in good faith and that Roma reasonably believed that that conduct was consistent with the Act, then the court may deny liquidated damages under 29 U.S.C. 216(2)(b). Otherwise, the court must impose those damages. In addition, the court must consider whether the pertinent Roma conduct was dilatory or otherwise unjust. If it was, then the court may exercise its discretion to impose a penalty under WIS. STAT. § 109.11(2)(b).

## CONCLUSION

¶ 55. In sum, for the reasons stated, we reverse the circuit court's judgment and remand for further proceedings.

*By the Court.*—Judgment reversed and cause remanded.