COURT OF APPEALS
DECISION
DATED AND FILED

August 25, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP342**

STATE OF WISCONSIN

Cir. Ct. No. **2018CV50**

IN COURT OF APPEALS
DISTRICT IV

ERVIN PETERS,

   PLAINTIFF-RESPONDENT,

 V.

CLARENCE PETERS,

   DEFENDANT-THIRD-PARTY
   PLAINTIFF-APPELLANT,

 V.

CATHERINE M. PETERS,

   THIRD-PARTY DEFENDANT.

---

APPEAL from an order of the circuit court for Green County: JAMES R. BEER, Judge. *Affirmed in part; reversed in part and cause remanded with directions.*

Before Blanchard, P.J., Graham, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Clarence Peters (Clarence) appeals a circuit court order sanctioning Ervin Peters (Ervin) $6,000 for discovery violations. Clarence argues that the court erroneously exercised its discretion in awarding him $6,000 when he was seeking approximately $19,000 in total. Specifically, Clarence argues that the court did not apply a methodology recognized by law when it reduced his total requested amount of attorneys' fees and costs by a set fraction. Clarence further contends that the court erroneously reduced the award out of the mistaken understanding that Ervin's prior attorney—whom the court apparently found at least partially responsible for the discovery violations—had left her firm or was no longer representing Ervin. In addition, Clarence argues that the court did not consider all of his affidavits itemizing fees and costs. Finally, Clarence argues that the court erroneously exercised its discretion in declining to award the cost of Clarence's time spent responding to discovery, billed at his hourly rate as a certified public accountant (CPA).

¶2 We agree with Clarence that the circuit court erroneously exercised its discretion in not applying a legally recognized methodology and by reducing the award based on mistakes of fact. We separately conclude that the court did not erroneously exercise its discretion in declining to award the cost of Clarence's time spent reviewing discovery. We reverse and remand for further proceedings consistent with this decision.

## BACKGROUND

¶3 During the relevant time period, Ervin and Clarence were CPAs who jointly owned and operated Peters & Peters, an accounting and tax preparation

firm. In the spring of 2018, Ervin sued Clarence and Clarence counterclaimed; each partner alleged that the other had breached their partnership agreement and misused business proceeds.

¶4 The parties dispute some of the details about Ervin's legal representation throughout this litigation. However, it is undisputed that between the spring of 2018 and January 15, 2020, Ervin was represented by Attorney Rose M. Yanke of the law firm Krekeler Strother, S.C.

¶5 On July 2, 2019, Clarence filed a motion to compel discovery. In a series of supporting affidavits, Clarence averred the following. Clarence served first, second, and third requests for production on Ervin on August 20, 2018, May 24, 2019, and May 27, 2019, respectively. Ervin responded to some requests by stating that the information was available on his work computers, but he refused to provide his password information for those computers. Moreover, although Ervin's wife Catherine Peters (Catherine) dropped off photocopied material at the office of Clarence's attorneys, this material did not constitute all of the documents requested. In addition, much of the material Catherine provided had been redacted. A number of bank account statements also were "clearly modified or falsified by" Ervin so that they did not reflect all banking activity. Finally, "the materials [we]re not identified in respect to what they represent[ed] in relation to discovery demands and b[ore] no accompanying documentation swearing to the authenticity of the materials either from [Ervin] or counsel."

¶6 The circuit court held a hearing on Clarence's motion on August 12, 2019. On August 23, the court ordered Ervin to provide his password information and to fully comply with Clarence's requests for production. The court ordered Ervin to disclose all discovery materials within thirty days of the hearing (that is,

by mid-September). The court explicitly declined to "make any findings at this time as to wrongdoing in failure to provide discovery responses through this date."

¶7 On December 18, 2019, Clarence filed a contempt motion and supporting affidavits. Clarence averred the following. He had received some additional materials, but certain documents requested were still outstanding. Moreover, he was still unable to access Ervin's computer records. Clarence also filed three lists totaling eighteen pages, setting forth discrete deposits, bank statements, copies of checks, and credit card statements that he believed existed but that Ervin had not disclosed.

¶8 On December 27, 2019, Clarence served on Ervin a fourth request for production.

¶9 On January 15, 2020, the circuit court began a hearing on Clarence's contempt motion. Clarence testified in more detail about Ervin's alleged noncompliance with his discovery obligations. Catherine testified that she had assisted Ervin in responding to discovery and had not intended to provide incomplete discovery. Moreover, Catherine testified, some documents had been redacted because that was "what we were told that we should do" (presumably, by Attorney Yanke). Catherine testified that she was now attempting to comply with the August 2019 order requiring Ervin to provide complete and unredacted discovery. The hearing was adjourned without being completed. The court indicated that a second date would be scheduled and that, in the interim, the parties should attempt to resolve their discovery dispute.

¶10 On March 20, 2020, Heather B. Jones—an attorney with Attorney Yanke's law firm, Krekeler Strother, S.C.—filed a notice of appearance on Ervin's

behalf. After this date, Attorney Jones, and not Attorney Yanke, appeared at all relevant proceedings and filed relevant written submissions on Ervin's behalf.

¶11 At a September 8, 2020 status conference, Clarence's attorney represented that Ervin had not complied at all with Clarence's third and fourth requests for production, that settlement negotiations could not proceed without that discovery, and that Clarence would be seeking attorney fees and sanctions "because it's been two years that we have been waiting for this stuff." Attorney Jones, meanwhile, represented that she was "still working to get [discovery] resolved."

¶12 At a September 21, 2020 status conference, Attorney Jones represented that she was attempting to comply with discovery and that she had emailed Clarence's attorney asking which information was still missing. Clarence's attorney responded that he had already provided specific lists of missing information almost a year prior (*i.e.*, the three lists of missing items totaling eighteen pages) and that he had followed up in March 2020 to notify Attorney Jones about which items were still missing. The circuit court then remarked that Clarence's attorney "blames [Attorney Jones, but] she is newer on the case and wasn't part of that so her personal knowledge is probably [limited]." Clarence's attorney clarified that he was blaming Ervin, and not Attorney Jones, for the alleged dilatory tactics. Clarence's attorney further noted, however, that "there shouldn't be any loss of continuity here," given that—by Attorney Jones' own admission—she and Attorney Yanke both still worked at Krekeler Strother, S.C.

¶13 On September 28, 2020, Clarence filed a brief in support of his contempt motion, a "timeline of relevant events for contempt hearing," and

affidavits of fees and costs. Clarence again alleged that the documents Ervin had provided during discovery were untimely, incomplete, improperly redacted, improperly served, and—in the case of the bank records—"falsified." Clarence further alleged that Ervin had provided incomplete written responses to the first and second requests for production (served on August 20, 2018, and May 24, 2019, respectively) and had not responded at all to the third and fourth requests for production (served on May 27 and December 27, 2019, respectively). *See* WIS. STAT. § 804.09(2)(b) (2019-20)[1] (a litigant must timely serve written responses to requests for production).

¶14    Based on these allegations, Clarence sought a "harsh sanction" under the discovery statute, including dismissal of Ervin's complaint, in addition to attorneys' fees. *See* WIS. STAT. § 804.12(2), (4) (providing discovery sanctions for, respectively, the failure to comply with a discovery order and the failure to serve a written response to requests for production). Clarence also attached affidavits of itemized attorneys' fees, totaling approximately $10,000, for work "specifically related to" Ervin's failure to timely comply with Clarence's requests for production.

¶15    The circuit court held the second part of the contempt hearing on October 2, 2020. Clarence testified further about Ervin's alleged discovery noncompliance. Clarence also testified to the "extra time" he had incurred to sift through extensive and often unresponsive documents that were "dumped" at his attorneys' office, and to determine which documents were missing and which bank

---

[1] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

records were possibly modified. Clarence testified that he had spent "[a]bout 250" hours of his own time on discovery review and that his hourly CPA rate was $115. Clarence also introduced an exhibit detailing numerous bank documents that were allegedly still outstanding as of September 29, 2020.

¶16    Ervin and Catherine testified that some of their actions—such as the initial redaction of documents and their providing boxes of unorganized documents to Clarence's law firm—were done on the advice or with the approval of Attorney Yanke. Ervin and Catherine further testified that they were attempting to complete discovery, that it had been difficult to access certain bank information, and that Attorney Yanke had not assisted them with the discovery process. In addition, Ervin testified that the bank records had not been falsified and, instead, had been inaccurate due to a bank error. Ervin testified that he had identified the nature of the bank error and had already provided Clarence with complete and accurate bank records.

¶17    In post-hearing briefing, Ervin attributed the problems with discovery to Attorney Yanke. In contrast, Clarence argued that there was no justification for the failure of both Attorneys Yanke and Jones (and Ervin, for his part) to comply with discovery. Clarence also filed updated affidavits of fees and costs, accounting for the time his attorneys spent preparing for and participating in the October 2, 2020 hearing and submitting post-hearing briefs. These affidavits alleged that Clarence incurred approximately $9,000 in additional attorneys' fees, plus some minimal costs. Thus, the attorneys averred, the total amount of fees and costs that Clarence incurred to address Ervin's discovery violations was approximately $19,000. Clarence also alleged that, in addition to this $19,000, he was personally due $28,750, representing 250 hours of work at his billable CPA rate of $115 per hour.

¶18    On November 8, 2020, the circuit court entered an order from the October 2, 2020 hearing. As pertinent here, the order states:

> The Court finds that [Ervin] has not properly responded to [Clarence]'s request for production of documents. [Ervin] will provide formal responses to [Clarence]'s discovery requests as required by statute. The court finds that 60 days should be sufficient for [Ervin] to issue subpoenas to obtain any missing items. If, after 60 days, [Clarence]'s discovery requests have not been complied with, or [Ervin] has not explained why certain document[s] have not been disclosed, [Ervin] will be found in continuing contempt and fined at the rate of $100.00 per day.

*See* WIS. STAT. § 785.04(1)(c) (the circuit court may impose a daily forfeiture as a remedial contempt sanction). The record does not reflect whether or when the court imposed a daily forfeiture as a remedy for Clarence's ongoing noncompliance.[2]

¶19    On December 22, 2020, the circuit court provided an oral ruling on Clarence's contempt motion. As reflected in the transcript passage below, the court denied Clarence's request to dismiss Erwin's complaint but granted the request for attorneys' fees. The court, however, awarded Clarence only $6,000, less than one third of his total fee and cost request of approximately $19,000 (putting aside the additional $28,750 he claimed he was due for his own work). Although the court's reasoning is not entirely clear from the record, the court

---

[2] Presumably, the daily forfeiture was not part of the $6,000 sanction ultimately imposed on Ervin, given that: (1) at the time of the December 22, 2020 hearing at which the circuit court determined the $6,000 amount, the 60-day time period referred to by the court had not yet expired; (2) the amounts discussed at the December 22 hearing were tied to the affidavits of fees and costs reflecting the time that Clarence's attorneys spent on the litigation; and (3) the daily forfeiture was meant to address Ervin's continuing noncompliance, as opposed to reimbursing Clarence for amounts already incurred.

indicated that it reduced the amount because only Ervin personally—but *not* his former attorney, Attorney Yanke—could be sanctioned. The court stated that this decision was premised on its understanding that, by the hearing date, Attorney Yanke was not an attorney of record for Ervin, was not working for Krekeler Strother, S.C., and may have been unaware of the ongoing contempt proceeding. The court explained as follows:

> [The court]: Then as to contempt, the Court has made numerous rulings on this matter, and I must say, [Ervin's] present counsel [Attorney Jones] was not part of the prior situation at all. And as she has stepped in since and taken over on this case….
>
> ….
>
> The Court though, however, upon the record is going to find that [Ervin] is in contempt for prior actions, it's [Ervin] who is being sanctioned and not his current attorney. That should be made clear. [Ervin] did hire his current counsel who acted on behalf of [Ervin]. [Ervin] also hired his prior counsel [Attorney Yanke]. [If Ervin] felt he was not being properly represented, he should have … sooner obtained new counsel.
>
> [Ervin's] prior attorney, however, is not now part of the action, was not joined for the purpose of these motions, was not noticed as to the issue on attorney's fees and sanctions. The Court does not think it has the authority without those notices and having the party brought into the action to issue any sanctions against the prior attorney, that is going to be left for counsel to do themselves.
>
> The Court … find[s] [Ervin] in contempt [for] not complying with discovery or properly objecting to it. But [the] sanction of dismissal asked for by opposing counsel is a drastic sanction and there appears that there could be merit from what the Court has seen in the pleadings in this case.
>
> A more appropriate sanction for that contempt in this case would be a monetary sanction that would include all or part of the attorney's fees. In setting the amount of attorney's fees in damages or as a sanction, the Court has to be mindful that the sanction must discourage such activity

9

in the future, but also [sic] in the Court's equitable powers be [sic] equitable sanctions.

Redacting without good cause puts additional time and expenses on the part of the opposing counsel. Failure to answer the [requests for production] properly, that is document dumping, also causes excessive time and excessive expenses and work for counsel for the opposing party. [The] fact that … a party acted on the advice of counsel improperly is a mitigating factor to be considered by the Court, but it is not an excuse.

As it has been commonly said throughout the centuries, [i]gnorance of the law is not an excuse. The Court has entered orders compelling discovery and they have not been complied with. The Court [can] order[] attorney's fees and it appears that it is compelled to do so in this case. Those attorney's fees should [be] the reasonable expenses, including the attorney fees caused by the failure [to comply], unless the Court finds the failure was substantially justified or other circumstances make the award of expenses unjust.

Here is where the mitigation of advice of counsel that [Ervin and Catherine] were acting under [comes in]. This does not excuse the neglect, but it's mitigating and again here the Court can find that [Ervin's] attorney was not made part of the motion for attorney's fees. The Court has noted that there has been a request of … approximately $12,000 in attorney fees in this matter. Under all the circumstances that have been involved in this that there was … advi[c]e of counsel, etcetera, the Court is going to find that $12,000 is excessive and as for contempt, but rather is going to cut that in half, and find that it's appropriate that the sanction for contempt is in the amount of $6,000.

….

[Clarence's attorney]: Your Honor, real quick, the attorney fees of $12,000 were as [of] the date of the [October 2, 2020] hearing. We filed an affidavit yesterday that updated them.

[The court]: I have already set the amount …. I have set the amount at $6,000. I have already made a decision I am not changing it.

[Clarence's attorney]: That's your decision, Your Honor. I was just providing you additional information. The other thing [is that] the firm is the same, it's a different

attorney, but the same law firm the whole time, it's not a
different law firm.

[The court]: I have made my decision….

¶20 On January 19, 2021, the circuit court entered an order "find[ing
Ervin] in contempt of court for not complying with the discovery requests and
orders"; "find[ing that Ervin's] failure to comply with the discovery requests and
orders was not substantially justified"; and ordering Ervin to pay $6,000 toward
Clarence's attorneys' fees and costs. Clarence appeals.

## DISCUSSION

*I. Standard of Review.*

¶21 We review for an erroneous exercise of discretion the circuit court's
determination on whether and how to sanction a party under WIS. STAT. § 804.12
or WIS. STAT. § 785.04. *See Industrial Roofing Servs., Inc. v. Marquardt*, 2007
WI 19, ¶41, 299 Wis. 2d 81, 726 N.W.2d 898 (Ct. App. 1990) (discovery
sanctions under § 804.12); *State ex rel. N.A. v. G.S.*, 156 Wis. 2d 338, 341, 456
N.W.2d 867 (Ct. App. 1990) (court's exercise of its contempt power under
§ 785.04). Similarly, we review for an erroneous exercise of discretion the
amount of attorney fees and other litigation costs awarded. *Bettendorf v.
Microsoft Corp.*, 2010 WI App 13, ¶16, 323 Wis. 2d 137, 779 N.W.2d 34 (2009).

¶22 A circuit court appropriately exercises its discretion when it
"examine[s] the relevant facts, applie[s] a proper standard of law, and, using a
demonstrated rational process, reache[s] a conclusion that a reasonable judge
could reach." *Loy v. Bunderson*, 107 Wis. 2d 400, 414-15, 320 N.W.2d 175
(1982). In other words, the court must use "a logical rationale based on the
appropriate legal principles and facts of record." *Johnson v. Roma II-Waterford*

*LLC*, 2013 WI App 38, ¶16, 346 Wis. 2d 612, 829 N.W.2d 538 (internal quotation marks and quoted source omitted). "Discretion is not synonymous with decision making; rather, it contemplates a process of reasoning from facts of record and reasonable inferences from them." *Peplinski v. Fobe's Roofing, Inc.*, 193 Wis. 2d 6, 20, 531 N.W.2d 597 (1995).

## II. The Circuit Court's Award of $6,000 to Clarence for Erwin's Discovery Violations Was Based on Legal and Factual Errors.

¶23    Clarence argues—and we agree—that the circuit court made both legal and factual errors in arriving at a total fee and cost award of $6,000, in that the court:  (1) reduced the total amount that Clarence requested without identifying a proper basis to do so; (2) mistakenly acted on the premise that the award should be reduced because Attorney Yanke, Ervin's primary attorney during most or all of the discovery dispute, was not an attorney of record for Ervin, was not working for Krekeler Strother, S.C., and may have been unaware of the ongoing contempt proceeding; and (3) erroneously acted from the premise that Clarence sought $12,000 in total fees and costs, not the approximately $19,000 actually sought. These latter two arguments, relating to the court's mistakes of fact, provide an independent basis for remand, and we address these additional arguments below. We begin, however, by addressing the court's mistake of law as to the methodology for calculating Clarence's total fee and cost award.  This discussion will explain the framework to be applied to the correct facts on remand and will contextualize our subsequent discussion on the court's mistakes of fact.

### A. The circuit court did not apply a proper methodology to calculate the total amount of attorneys' fees and costs.

¶24    Clarence argues that the circuit court erroneously exercised its discretion in reducing his request for attorneys' fees and costs because the court

failed to use a methodology recognized by law. Clarence argues that the court was required to, but did not, use the **Kolupar** "lodestar" approach to calculate attorneys' fees, which represented the bulk of the total amount requested. *See* **Kolupar v. Wilde Pontiac Cadillac, Inc.**, 2004 WI 112, ¶¶23-30, 275 Wis. 2d 1, 683 N.W.2d 58 (adopting the "lodestar" methodology for calculating attorney fees under fee-shifting statutes). Ervin, for his part, appears to concede that the court was obligated to use the **Kolupar** lodestar methodology, but he argues that the court properly applied that methodology to arrive at an award of $6,000.

¶25 As background, prior to **Kolupar**, the accepted method for determining attorney fees in the fee-shifting context was for the circuit court to apply, in the exercise of its discretion, the eight factors set forth in SCR 20:1.5 (2022).[3] **Kolupar**, 275 Wis. 2d 1, ¶¶23-27, 33. In **Kolupar**, our supreme court "provid[ed] an objective framework to assess these factors" by adopting the methodology for awarding attorney fees used in federal fee-shifting statutes, as set forth in **Hensley v. Eckerhart**, 461 U.S. 424, 433-34 (1983). *See* **Kolupar**, 275 Wis. 2d 1, ¶¶27-28. Under this approach, "'[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'" *Id.*, ¶28,

---

[3] These factors are: (1) "the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly"; (2) "the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer"; (3) "the fee customarily charged in the locality for similar legal services"; (4) "the amount involved and the results obtained"; (5) "the time limitations imposed by the client or by the circumstances"; (6) "the nature and length of the professional relationship with the client"; (7) "the experience, reputation, and ability of the lawyer or lawyers performing the services"; and (8) "whether the fee is fixed or contingent." SCR 20:1.5(a).

All references to SCR 20:1.5 are to the 2022 version.

quoting *Hensley*, 461 U.S. at 433. After the court determines this "lodestar" figure—*i.e.,* the product of reasonable hours and a reasonable hourly rate—it may then adjust the amount up or down to account for any additional factors or considerations set forth in SCR 20:1.5. *Kolupar*, 275 Wis. 2d 1, ¶¶29-30, 33. The result is an "objective framework" that "reinforces the circuit court's discretion to set an award within a range of reasonableness and at the same time injects the exercise of that discretion with objectivity and uniformity." *Id.*, ¶30.

¶26 We agree with Clarence that the circuit court failed to apply *Kolupar* or any discernable methodology. Instead, as summarized above, the court appears to have simply reduced the fee and cost request based on the premise that Attorney Yanke's role created a mitigating factor (a consideration that we address in the following section), but without taking into account the number of attorney hours reasonably expended, a reasonable hourly rate, or any other considerations set forth in SCR 20:1.5. *See Johnson*, 346 Wis. 2d 612, ¶26 ("The record ought to assure us that the [trial-level] court did not 'eyeball' the fee request and cut it down by an arbitrary percentage because it seemed excessive to the court." (alteration in original; internal quotation marks and quoted source omitted)). Thus, the court did not properly apply the law, in that it did not follow any legal authority or any legally supported reasoning process to arrive at an award amount. Instead, the court simply determined that the amount sought was "excessive" under the circumstances and that it was "going to cut that in half." Finally, the court did not specifically address the request for costs. Although it appears that this amount is minimal, the court may not have taken it into account at all.

Accordingly, remand is appropriate for the circuit court to apply the lodestar methodology based on the facts of record.[4]

###### B. The circuit court based its award on two mistakes of fact.

¶27 Clarence argues that the circuit court erroneously exercised its discretion when it made two broad mistakes of fact in calculating his total fee and cost award. The first factual mistake relates to Ervin's legal representation. Clarence argues that the court erroneously assumed that: (1) Attorney Yanke stopped representing Ervin sometime before October 2, 2020, the second day of the contempt hearing; and (2) Attorneys Yanke and Jones worked at separate firms, when, in fact, they both worked at Krekeler Strother, S.C. Thus, Clarence argues, the court acted on the false premises that Attorney Yanke was not involved in Ervin's case as of the October hearing, did not have notice of that proceeding,

---

[4] The record is unclear as to whether the circuit court's fee and cost award was pursuant to WIS. STAT. § 804.12 (governing discovery sanctions), WIS. STAT. § 785.04 (providing for remedial contempt sanctions), or both statutes. We note that the final order on sanctions quotes language from § 804.12—specifically, that Ervin's failure to comply was not "substantially justified"—but also holds Ervin in contempt, and the record is otherwise somewhat unclear as to the primary statute under which the court was sanctioning Ervin. Given, however, that both §§ 804.12 and 785.04 provide for an award of attorney fees and costs under the circumstances present here, we need not decide this point. *See* § 804.12(1)(c)1., (2)(b), (4) (when an order compelling discovery is granted, when a party fails to obey an order compelling discovery, or when a party fails to serve a written response to a request for production, the court "shall" require the party, its attorney, or both to pay "the reasonable expenses," "including attorney fees," that the other party incurs to address the party's noncompliance with the discovery statutes or the court order, "unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust"); § 804.12(2)(a)4. (as pertinent here, in addition to awarding the "reasonable expenses" associated with the failure to obey an order to compel, the court may treat such failure as contempt of court); § 785.04(1)(a) (the court may impose "one or more" remedial contempt sanctions, including the "[p]ayment of a sum of money sufficient to compensate a party for a loss or injury suffered by the party as the result of a contempt of court"); *Town of Seymour v. City of Eau Claire*, 112 Wis. 2d 313, 320 & n.1, 332 N.W.2d 821 (Ct. App. 1983) (the "[p]ayment of a sum of money" under § 785.04(1)(a) includes an award of attorney fees and other litigation costs).

and was not "joined for the purposes of these motions," and that the court therefore could not impose sanctions based on her conduct. Ervin, in contrast, argues that Attorney Yanke was not representing Ervin as of the October hearing, and, therefore, that she had no notice of the ongoing contempt proceeding.[5]

¶28    The record establishes that Attorneys Yanke and Jones worked at the same firm, Krekeler Strother, S.C. Moreover, the record establishes that Attorney Yanke was still working at the firm and involved in Ervin's case as of the October 2, 2020 hearing. At a status conference two weeks before that hearing, Attorney Jones represented to the court that Attorney Yanke was "still with" the firm. Moreover, the September 29 notice for that hearing states that Attorney Yanke had been electronically noticed, indicating that she was still an attorney of record for Ervin. Finally, Attorney Jones filed Attorney Yanke's notice of withdrawal on March 17, 2021, two months *after* the court entered the final order

---

[5] We briefly explain an underlying issue that neither party squarely addresses. To the extent the court was sanctioning Ervin under WIS. STAT. § 804.12, it found that Ervin's "failure to comply with the discovery requests and orders was not substantially justified." *See* § 804.12(1)(c)1., (2)(b), (4). As stated, pursuant to these provisions, the court "shall" impose a sanction of "reasonable expenses" on the noncomplying party, its attorney, or both, after *first determining* that the conduct was not "substantially justified or that other circumstances [did not] make an award of expenses unjust." *See id.* By use of the phrase "not substantially justified," followed by the imposition of sanctions, the court may have determined that Ervin's discovery noncompliance both was not substantially justified and that other circumstances did not make an award of expenses unjust. The parties do not address whether, in such case, the court was permitted to reduce the *amount of the award* based on the premise that Attorney Yanke was no longer Ervin's attorney. Along similar lines, to the extent the court was imposing remedial sanctions under WIS. STAT. § 785.04, the parties do not address whether the court was permitted to rely on this premise to reduce the *amount of the award*. *See* § 785.04(1)(a) ("A court may impose one or more of the following remedial sanctions…. Payment of a sum of money sufficient to compensate a party for a loss or injury suffered by the party as the result of a contempt of court."). Accordingly, we do not address these issues in this decision. Instead, we address the issue that both parties focus on in their briefing—namely, whether, in fact, Attorney Yanke was Ervin's attorney of record and was presumed aware of the contempt proceeding as of the October 2, 2020 contempt hearing.

on sanctions on January 19, 2021. Thus, to the extent the circuit court acted from the premise that the sanction could not be based on Attorney Yanke's conduct because she was no longer involved in the case and was unaware of the contempt proceeding, its decision was based on a mistake of fact.[6]

¶29    Second, Clarence argues that the circuit court erroneously assumed that he sought an award of $12,000 (representing some, but not all, of his fees and costs), when in fact he requested approximately $19,000 (the updated total request amount). In response, Ervin appears to argue that any mistake as to the total amount Clarence requested was harmless because the court had the discretion to award $6,000 in the manner it did.

¶30    We have already rejected Ervin's argument that the circuit court had the discretion to award $6,000 by reducing Clarence's total request by half, as this decision was not discernably based on any methodology recognized in the law. We further agree with Clarence that the court made a mistake of fact when it acted from the premise that Clarence requested approximately $12,000, rather than approximately $19,000, in fees and costs. The court apparently made this mistake because one of Clarence's attorneys did not file his supplemental affidavit on fees and costs, totaling approximately $7,500, until December 21, 2020, one day before the court's oral ruling. Thus, at that ruling, the court's references to $12,000

---

[6] Ervin refers us a rule of *appellate* procedure to argue that an entry of appearance constitutes the substitution of counsel. *See* WIS. STAT. RULE 809.85(4)(c). Ervin argues that "[t]he appropriate assumption based upon [Attorney Jones' filing her March 20, 2020 notice of appearance] and subsequent lack of any appearance of Attorney Yanke is that Attorney Yanke is no longer representing Ervin." Of course, RULE 809.85 does not apply to proceedings before the circuit court. Moreover, as set forth above, the record belies Ervin's conclusion: Attorney Yanke was electronically noticed on September 29, 2020, and she did not file her notice of withdrawal until after the circuit court entered its final order on sanctions.

appear to correspond to Clarence's approximate total fee and cost request as of December 20. As noted, Clarence's attorney attempted to correct the court on this point, but he was disregarded. Therefore, on remand, the starting point for the court's fee and cost determination through the time of the court's oral ruling should be Clarence's affidavits of itemized fees and costs, which seek approximately $19,000 in total.

### III. *The Circuit Court Did Not Erroneously Exercise Its Discretion in Failing to Award the Cost of Clarence's Time as a CPA.*

¶31    Clarence argues that the circuit court erroneously exercised its discretion by failing to address his request for the reimbursement of his own time at his CPA hourly rate. Ervin responds that the court appropriately exercised its discretion on this issue because Clarence has provided "no legal basis or citations as to why he should be able to claim his hourly rate as CPA as the rate at which he can charge to review documents in his own litigation case."

¶32    By their unambiguous terms, both WIS. STAT. §§ 804.12 and 785.04 provide a means of awarding the litigation expenses that a party reasonably incurs to address the opposing party's discovery violations. *See supra*, note 4. Such an award may encompass the cost to hire an expert, when that expert otherwise would not be required. *See, e.g.*, **Novo Indus. Corp. v. Nissen**, 30 Wis. 2d 123, 126-27, 132, 140 N.W.2d 280 (1966) (the award of costs and expenses under the statutory predecessor to WIS. STAT. ch. 785 properly included the cost to hire an engineer to determine whether a party had conducted business in violation of a court-ordered noncompete judgment); *see also* **Hur v. Holler**, 206 Wis. 2d 335, 343-45, 557 N.W.2d 429 (Ct. App. 1996) (referring to compensatory sanctions under § 804.12 as those "actual costs and expenses incurred by the non-offending party" because of the offending party's discovery noncompliance).

¶33   For purposes of this appeal, however, we need not determine whether litigation costs may encompass the cost to hire the litigant acting as an expert in his or her own case.  This is because Clarence has not made even a basic showing that he is entitled to the amount of reimbursement he requests.  Both here and before the circuit court, Clarence has merely asserted that he spent at least 250 hours reviewing the documents that Ervin provided.[7]  Clarence has not explained which portion of those hours is attributable to Ervin's discovery noncompliance specifically.  Moreover, and crucially, Clarence has not explained for which portion of those 250 hours he was acting as an expert, as opposed to a litigant.  Finally, Clarence provided no itemization or supporting documentation that might substantiate his testimony and enable the circuit court (and this court) to determine these questions.

¶34   An exercise of discretion necessarily rests on the moving party's properly presenting all the relevant facts to the circuit court.  *See, e.g.*, *Kolupar*, 275 Wis. 2d 1, ¶34 (the moving party had the burden of demonstrating that the amount of fees sought was reasonable; the failure to do so meant that the circuit court "had little relevant information to assist [it] in making [its] fee award").  Moreover, we "generally look for reasons to sustain discretionary decisions," and "[w]hen the [circuit] court's reasoning is inadequate or incomplete, we may independently review the record to look for additional reasons to support the court's exercise of discretion." *Johnson*, 346 Wis. 2d 612, ¶34 (first alteration in original; internal quotation marks and quoted source omitted).  Here, the record

---

[7] At one point, Clarence testified that he spent 400 to 500 hours of his own time reviewing discovery.  However, later in the discovery dispute, Clarence claimed than he spent 250 hours reviewing discovery, and he reiterates this figure on appeal.

reflects that the court did not have even the most basic information necessary to determine the appropriateness and amount of an award reimbursing Clarence's time at his hourly CPA rate. Accordingly, we conclude that the court appropriately exercised its discretion in not awarding the cost of Clarence's time spent reviewing discovery.

### IV. We Reject Ervin's Argument That Clarence Is Seeking a "Double Award" of Attorneys' Fees.

¶35 Ervin argues that Clarence "is not entitled to a double award of attorney fees." This point is somewhat unclear, but Ervin appears to be raising two separate arguments. First, Ervin appears to argue that Clarence has not filed the appropriate documentation necessary to support a total fee and cost award above $6,000. This argument is belied by the record. Clarence presented the circuit court with detailed invoices accounting for his attorneys' time spent on this discovery dispute, and related costs. Ervin fails to provide us with a basis to conclude that the circuit court, on remand, lacks the appropriate documentation necessary to make this determination.[8]

¶36 Alternatively, Ervin may mean to argue that a circuit court cannot award fees and costs when, as here, it also imposes, or threatens to impose, a daily forfeiture as a remedial sanction under WIS. STAT. § 785.04(1)(c). This argument

---

[8] Ervin argues that Clarence "does not distinguish amounts that should be awarded as separate attorney fees for Ervin's failure to provide written responses" to Clarence's request for production. As stated, under WIS. STAT. § 804.12, the circuit court may award the reasonable expenses a party incurs to: (1) obtain an order to compel, *see* § 804.12(1)(c)1.; (2) address the failure to obey an order to compel, *see* § 804.12(2)(b); and (3) address the failure to serve a written response to a request for production, *see* § 804.12(4). To the extent Ervin means to argue that Clarence has not provided the documentation necessary to reimburse attorneys' fees under § 804.12(4)—separate and apart from the fees associated with addressing other aspects of this discovery dispute—the circuit court may address this point on remand.

is meritless, given that a fee and cost award under *either* WIS. STAT. § 804.12 or § 785.04(1)(a) may be *in addition to* a daily forfeiture for continued noncompliance. *See supra,* note 4.

¶37    Relatedly, Ervin argues that sanctions cannot be imposed because his "failure to comply with discovery has not been determined."  However, the final order sanctioning Ervin finds that Ervin had *not* complied with prior discovery orders.  Accordingly, we reject Ervin's argument to the extent he means to argue that the circuit court did not make the preliminary findings necessary to support a fee and cost award.

## CONCLUSION

¶38    In sum, we remand for a redetermination of Clarence's attorneys' fees and costs, but not the cost of Clarence's time at his CPA hourly rate.  To determine the appropriate amount of attorneys' fees, the court should apply the lodestar methodology set forth in ***Kolupar***, 275 Wis. 2d 1, ¶¶28-30.  It is beyond the scope of this decision to discuss whether and how the parties should address the conduct of Attorney Yanke in the proceedings on remand.  But, as discussed above, the court should proceed with the understanding that Attorney Yanke was electronically noticed for the October 2, 2020 contempt hearing and that her notice of withdrawal was not filed until March 17, 2021.  Moreover, the circuit court should consider all of Clarence's affidavits itemizing fees and costs.

¶39    Accordingly, we reverse the order awarding Clarence $6,000 as a sanction for Ervin's discovery violations, and we remand for proceedings consistent with this decision.[9]

*By the Court.*—Order affirmed in part; reversed in part and cause remanded with directions.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[9] Clarence requests that we order the circuit court to "make a determination of the reasonable expenses, including attorney fees[,] incurred by Clarence in this appeal." Clarence does not cite any legal authority for this request. To the extent he seeks attorneys' fees pursuant to WIS. STAT. RULE 809.25(3), we note that he has not filed a separate motion for such award, as is required. Moreover, fees under Rule 809.25(3) are available against only the appellant or cross-appellant upon our determination that an appeal or cross-appeal is wholly frivolous. Therefore, Clarence, as the appellant, may not seek attorneys' fees under this provision against the respondent, Ervin. If Clarence seeks to recover costs from Ervin, the procedure for doing so is set forth in RULE 809.25(1)(c). Here, however, such costs may be unavailable, given that Clarence has prevailed on appeal only in part. *See* RULE 809.25(1)(a)2.